[Cite as *State v. Smith*, 2010-Ohio-4507.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No: 09CA29 |
| | : | |
| v. | : | |
| | : | **DECISION AND** |
| Harry R. Smith, | : | **JUDGMENT ENTRY** |
| | : | |
| Defendant-Appellant. | : | File-stamped date:  9-20-10 |

_____

**APPEARANCES:**

W. Jeffrey Moore, of Columbus, Ohio, for Appellant.

James B. Grandey, Highland County Prosecutor, and Anneka P. Collins, Highland County Assistant Prosecutor, Hillsboro, Ohio, for Appellee.

_____

Kline, J.:

**{¶1}** Harry R. Smith appeals his convictions for possession of chemicals for the manufacturing of methamphetamine, possession of methamphetamine, aggravated trafficking in drugs, and tampering with evidence.  On appeal, Smith contends his convictions for possession of chemicals for the manufacturing of a controlled substance and tampering with evidence are not supported by sufficient evidence and are against the manifest weight of the evidence.  We disagree; (1) after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the two crimes proven beyond a reasonable doubt, and (2) we find substantial evidence upon which the trier of fact could reasonably conclude that all the elements of the two offenses have been proven beyond a reasonable doubt.

**{¶2}** Smith next contends that R.C. 2925.041 is vague and overbroad in violation of the Due Process and Equal Protection Clauses of the United States and Ohio Constitutions. We disagree, finding that R.C. 2925.041 requires proof of intent to manufacture, and this element provides a sufficient standard to prevent arbitrary enforcement.

**{¶3}** Smith next contends that the prosecutor committed prosecutorial misconduct that improperly influenced the jury and prejudiced Smith's right to a fair trial. We disagree. After review, we find that the prosecutor did not argue conclusions unsupported by the record. Furthermore, we do not find any plain error in the prosecutor's closing arguments.

**{¶4}** Smith next contends that the trial court erred in allowing the State to amend the indictment. We agree, and find that the amendment changed the name of the alleged offense.

**{¶5}** Smith next contends that the State violated his Fourth Amendment rights and that the trial court erred by admitting evidence seized during the search of room 136 of the Greystone Motel. We disagree, finding that the warrant was supported by adequate probable cause and that Smith fails to demonstrate that any other irregularities led to any admissible evidence.

**{¶6}** Finally, Smith contends that the trial court violated his right to equal protection and the due process of law by refusing to accept his filings and by restricting the scope of his attorney's examinations during a suppression hearing. We disagree. Smith had no right to act as his own attorney since he was represented, and Smith failed to make a sufficient substantial showing to be entitled to challenge the veracity of the affidavit.

{¶7}     We, therefore, affirm, in part, and reverse, in part, the judgment of the trial court.

I.

{¶8}     On May 14, 2009, detectives Richard Warner and Dan Croy received information that illegal activity might be in progress at room 136 of the Greystone Motel. Pursuant to this information, Croy and Warner conducted surveillance of the Greystone Motel. They observed a large amount of foot traffic into and out of room 136. After three hours of surveillance, Croy and Warner went off duty, and Croy told Lieutenant Stephen Alexander that Croy suspected illicit activities may be taking place at room 136 of the Greystone Motel.

{¶9}     Sometime around 4:30 in the morning of May 15, 2009, Alexander and Deputy Hughes (another Highland County Sheriff's Officer) drove past the Greystone Motel. They observed a woman leave room 136 and enter a vehicle. As the vehicle departed, Alexander and Hughes noticed that the vehicle had a broken rear brake light.

{¶10}    Smith was in the hotel room along with his daughter, Abby Smith, his son, Wesley Smith, and another friend, Christopher Magee. When Alexander and Hughes started following the departing vehicle, Abby noticed and alerted the other occupants. The occupants then proceeded to attempt to destroy or otherwise remove evidence from the hotel room.

{¶11}    The police then stopped the vehicle on the basis of the broken rear brake light. There were two occupants in the vehicle. Clark, a male, was in the front passenger's seat. Miranda Johnson, the driver, was the female the police had earlier seen leaving the hotel room. In the course of the traffic stop, Alexander found a plastic

waterproof container that contained three baggies of white powder on Clark's person. Later, at trial, the State's chemical expert testified that this white powder was methamphetamine.

**{¶12}** Alexander and Hughes then proceeded to room 136 of the Greystone Motel to confront the occupants. Alexander knocked on the door and identified himself. Smith refused to sign the consent form to allow the police to search the hotel room. Alexander and Hughes then ordered the occupants out of the room, and Alexander called detective Croy updating him on recent events and asked him to procure a search warrant for room 136 of the Greystone Motel.

**{¶13}** Within a couple hours, the police obtained a warrant and proceeded to search the hotel room. The police discovered aluminum foil and methamphetamine in the toilet of the room. They also discovered three sets of scales and numerous plastic bags, some with corners cut out. Finally, a short distance away, the police discovered a bag wrapped in a t-shirt that contained lithium batteries and pseudoephedrine-based cold medicine.

**{¶14}** The Highland County Grand Jury returned an indictment against Smith indicting him for (1) knowingly assembling or possessing one or more chemicals that may be used to manufacture a controlled substance in violation of R.C. 2925.041; (2) knowingly obtaining, possessing, or using a schedule II controlled substance in violation of R.C. 2925.11; (3) knowingly preparing for shipment, shipping, transporting, delivering, preparing for distribution, or distributing methamphetamine in violation of R.C. 2925.03(A)(2); and (4) knowingly altering, destroying, concealing, or removing any thing

with purpose to impair its value or availability as evidence in a proceeding or investigation in violation of R.C. 2921.12(A)(1).

{¶15}     Smith entered not guilty pleas and the case proceeded to a jury trial.  The jury returned guilty verdicts on all four counts.  The trial court then sentenced Smith to consecutive sentences of 5 years on count one, 12 months on count two, 5 years on count three, and 5 years on count four.

{¶16}     Smith appeals from this judgment and assigns the following errors for our review: I. "The State of Ohio Failed to Prove All the Essential Elements of Tampering With Evidence and Illegal Assembly or Possession of Chemicals for the Manufacturing of Drugs, Making the Conviction for Said Charges Against the Weight of the Evidence." II. "Ohio Revised Code Section 2925.041 is vague and over broad and violates both the due process and equal protection provisions of the constitutions of the United States and the State of Ohio."  III. "Prosecutorial Misconduct Improperly influenced the Jury and Prejudiced the Appellant's Right to a Fair Trial."  IV. "The Trial Court Erred in Allowing the State of Ohio to Amend the Trafficking in Drugs From a Felony of the 4th Degree to Aggravated Trafficking in Drugs a Felony of the 3rd Degree Without Review by a Grand Jury."  V. "The Trial Court Erred in Failing to Suppress the Evidence Found in Room 136 at the Greystone Motel and on the Person of Harry Smith."  And VI. "The Defendants Right to Due Process and Equal Protection Guaranteed Under the Constitutions of the State of Ohio and the United States Was [sic] Violated by the Trial Court."

II.

{¶17}     Smith first contends that two of his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence.  We note that Smith failed to separately argue these two distinct issues, but instead mixed both issues into a single assignment of error.

{¶18}     When reviewing a case to determine whether the record contains sufficient evidence to support a criminal conviction, our function "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.  See, also, *Jackson v. Virginia* (1979), 443 U.S. 307, 319.

{¶19}     This test raises a question of law and does not allow the court to weigh the evidence.  *State v. Martin* (1983), 20 Ohio App.3d 172, 175.  Rather, this test "gives full play to the responsibility of the trier of fact * * * to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."  *Jackson* at 319.  Accordingly, the weight given to the evidence and the credibility of witnesses are issues for the trier of fact.  *State v. Thomas* (1982), 70 Ohio St.2d 79, 79-80; *State v. DeHass* (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.

{¶20}     Smith first contends that the State failed to prove all of the essential elements of tampering with evidence in violation of R.C. 2921.12(A)(1).  This statute provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any

record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"  R.C. 2921.12(A)(1).

**{¶21}**     Smith claims that the State produced no evidence that an investigation was about to be instituted or likely to be instituted as to the hotel room or himself.  Clark testified that he obtained an amount of methamphetamine from Smith.  Trial Transcript at 39.  Abby Smith testified that she observed the sheriff's car follow Clark from the Greystone Motel.  Id. at 325-26.  Wesley Smith called Clark's cell phone and asked if the police were following Clark.  Id. 326.

**{¶22}**     During this phone call, Smith told Clark to throw the methamphetamine away or swallow it.  Immediately after the phone call, Smith walked to the bathroom and flushed some methamphetamine that he had in his pocket down the toilet.  Smith also told Christopher Magee to start flushing "burnt foils and the straws or baggies that is over laying and if anything was laying around to get rid of it."  Id. at 328.  Smith then ordered Wesley Smith to take the boxes of pseudoephedrine pills and the lithium batteries and throw them into the woods.  Smith had previously indicated to Abby Smith that he was going to use the pseudoephedrine pills and lithium batteries to produce methamphetamine.

**{¶23}**     If a juror believed this testimony, then the juror could conclude that Smith had sold methamphetamine to Clark, that Clark was about to be stopped by officers of the Highland County Sheriff's Office, and further conclude that Smith believed Clark was likely to lead the officers back to room 136 of the Greystone Motel.  Therefore, any reasonable juror could conclude that Smith reasonably believed an investigation by police officers was imminent, and, under this belief, Smith himself destroyed evidence

and ordered the other residents to destroy or attempt to destroy evidence.  Therefore, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of tampering with evidence proven beyond a reasonable doubt.

**{¶24}**     Smith next contends that his conviction for illegal assembly or possession of chemicals for the manufacturing of drugs is sustained by insufficient evidence.  This provision makes it a crime for any person to "knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code."  R.C. 2925.041(A).

**{¶25}**     Here, the State is referring to the boxes of pseudoephedrine pills and lithium batteries.  Smith argues that the only testimony supporting Smith's intention to use these items to fabricate methamphetamine comes from Abby Smith.  And Smith argues that her testimony was procured through the use of a deal (the nature of this alleged deal is somewhat vague, but presumably it is a plea bargain) and is therefore not credible.

**{¶26}**     This admission amply demonstrates that Smith's conviction is supported by sufficient evidence.  Abby testified that Smith expressly stated that he intended to use those items to "cook" methamphetamine.  Trial Transcript at 331.  We do not consider the credibility of the witnesses when we consider the sufficiency of the evidence. Therefore, after viewing the evidence in a light most favorable to the prosecution, we find that any rational trier of fact could have found the essential elements of the crime of

possession of chemicals for the manufacturing of methamphetamine proven beyond a reasonable doubt.

**{¶27}** Smith also contends that both of these convictions are against the manifest weight of the evidence.

**{¶28}** When determining whether a criminal conviction is against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, paragraph two of the syllabus. See, also, *State v. Smith*, Pickaway App. No. 06CA7, 2007-Ohio-502, at ¶41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith* at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-71; *State v. Martin* (1983), 20 Ohio App.3d 172, 175. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175 (citations omitted).

**{¶29}** "Even in our role as thirteenth juror we are constrained by the rule that the weight to be given evidence and the credibility to be afforded testimony are normally issues to be determined by the trier of fact. * * * The fact finder 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' * * * Thus, we will

only interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice." *State v. Davis*, Washington App. No. 09CA28, 2010-Ohio-555, at ¶13 (citations within quote omitted).

**{¶30}** First, we find that substantial evidence exists to support Smith's conviction for tampering with evidence. Abby testified that Smith personally destroyed the methamphetamine that he was carrying in his pocket. This account is bolstered by testimony from Clark indicating that Smith sold him methamphetamine. Wesley Smith did testify that Smith was unconnected with any drug trafficking and that Abby was responsible for any drug trafficking in room 136 of the Greystone Motel. But in considering the whole of the record, we do not find that Smith's conviction is one of those exceptional cases where the jury so lost its way that a manifest miscarriage of justice resulted. We therefore find that Smith's conviction for tampering with evidence is not against the manifest weight of the evidence.

**{¶31}** Second, Smith contends that his conviction for possession of chemicals with the intent to manufacture a controlled substance is against the manifest weight of the evidence. We may reweigh the evidence when considering a challenge based on the manifest weight of the evidence. However, we also find that the record discloses additional material facts that support Abby's testimony that Smith intended to use the pseudoephedrine to "cook" methamphetamine. Most importantly, it is undisputed that pills and batteries were found wrapped in a plastic bag and t-shirt that were thrown away. Certainly, the attempt to dispose of these items indicates some measure of guilt or belief that possession of the items would indicate guilt. Presumably, this guilt exists because the possessor had an illicit motive to use the items. Also, we must consider

the fact that boxes of pills were discovered in a bag with lithium batteries. It is certainly plausible that someone may purchase both batteries and cold medicine at the same time. However, the presence of both items, with the other evidence in the case, supports the conclusion that Smith intended to use the chemicals to manufacture methamphetamine. Therefore, we find substantial evidence upon which the trier of fact could reasonably conclude that all the elements of the offense of possession of chemicals for the manufacturing of methamphetamine have been proven beyond a reasonable doubt.

**{¶32}** Accordingly, we overrule Smith's first assignment of error.

### III. R.C. 2925.041 is Constitutional

**{¶33}** Smith next contends that R.C. 2925.041 is unconstitutional. Smith claims that this statute is vague and overbroad because "[i]nnocent legal behavior under this statute may be interpreted arbitrarily by law enforcement to unfairly saddle innocent citizens with felonious behavior and a day in court which they should not have to face."

**{¶34}** We review the constitutionality of a statute on a de novo basis. See, e.g., *State v. Anderson*, Athens App. No. 09CA18, 2009-Ohio-7014, at ¶4.

**{¶35}** "[W]e must presume the constitutionality of the statute at issue. All legislative enactments enjoy a strong presumption of constitutionality." *State v. Benson* (1992), 81 Ohio App.3d 697, 700, citing *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 199, overruled on other grounds by *Brennaman v. R.M.I. Co.*, 70 Ohio St.3d 460, 1994-Ohio-322; *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 274.

**{¶36}** Smith maintains that R.C. 2925.041 is vague and overbroad. We construe this as an argument that this statute is void for vagueness. "The void-for-vagueness

doctrine ensures that individuals can ascertain what the law requires of them. * * * In order to survive a void-for-vagueness challenge, the statute at issue must be written so that a person of common intelligence is able to determine what conduct is prohibited, and the statute must provide sufficient standards to prevent arbitrary and discriminatory enforcement." *State v. Williams*, 88 Ohio St.3d 513, 532, 2000-Ohio-428, citing *Chicago v. Morales* (1999), 527 U.S. 41, 56-57 (other internal citation omitted).

**{¶37}** The relevant provision of R.C. 2925.041(A) provides that "[n]o person shall knowingly assemble or possess one or more chemicals that may be used to manufacture a controlled substance in schedule I or II with the intent to manufacture a controlled substance in schedule I or II in violation of section 2925.04 of the Revised Code." We find this provision similar in substance to a different provision that prohibits the possession of criminal tools. That statute provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A).

**{¶38}** Both statutes provide that the possession of otherwise legal items may be criminal based on the intent of the possessor. Thus, under either statute, the mere possession is not the prohibited conduct. See *State v. Moon*, Adams App. No. 08CA875, 2009-Ohio-4830, at ¶18 (stating that R.C. 2925.041(A) "requires the state to prove that she intended to manufacture [drugs]"); *State v. McDonald* (1987), 31 Ohio St.3d 47, 49 (stating that, under R.C. 2923.24, "[i]t is the possession coupled with the intent to use the device to commit a crime which is the prohibited conduct").

**{¶39}** The Supreme Court of Ohio rejected a facial challenge to the possession-of-criminal-tools statute largely because the statute required the State to prove the

defendant's intent in regard to the alleged criminal tools. *McDonald* at 49-50. "By including this scienter requirement, the General Assembly has required both control of the article and the specific intention to use the article to commit a crime. These elements provide sufficient notice to persons of ordinary intelligence of the prohibited conduct." Id. at 49. Similarly, R.C. 2925.041 requires both proof of the assembly or possession of chemicals and proof that the defendant intended to use the chemicals to manufacture a controlled substance.

{¶40}    We find this element serves to give persons of common intelligence the ability to determine what conduct is prohibited and provides sufficient standards to prevent arbitrary and discriminatory enforcement.

{¶41}    Smith also asserts that intent lies in the privacy of one's own thoughts, and intent is not susceptible to objective proof. Smith cites two Supreme Court of Ohio opinions in support of this proposition. *State v. Huffman* (1936), 131 Ohio St. 27, paragraph four of the syllabus; *State v. Garner*, 74 Ohio St.3d 49, 60, 1995-Ohio-168. *Garner*, the latter case, merely quotes from an opinion that, in turn, quotes the relevant language in *Huffman*.

{¶42}    In reviewing Smith's argument, we find that he has substantially distorted the law of the Supreme Court of Ohio. The passage cited is as follows: "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." *Huffman* at paragraph four of the syllabus.

**{¶43}** Smith cites this passage for the principle that intent is not subject to objective proof. The Supreme Court of Ohio instead reached the limited conclusion that intent may never be proven by direct testimony of a third person. This statement cannot be taken to mean that all proof of intent is necessarily subjective or that intent can never be proven objectively. The Supreme Court is using the term "direct" in a manner similar to its traditional application in the law of evidence. That is, direct evidence is "'[e]vidence, which if believed, proves existence of fact in issue without inference or presumption[.]'" *Reeves v. Vitt*, Geauga App. No. 2008-G-2821, 2009-Ohio-2436, at ¶41, quoting Black's Law Dictionary (6 ed.1990) 460.

**{¶44}** "'But direct evidence of a fact is not required. Circumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence.'" *State v. Durr* (1991), 58 Ohio St.3d 86, 92, quoting *Michalic v. Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330 (other citations omitted). Ohio courts have repeatedly concluded that "circumstantial evidence can have the same probative value as direct evidence. * * * A conviction can be sustained based on circumstantial evidence alone." *State v. Franklin* (1991), 62 Ohio St.3d 118, 124 (internal citations omitted). The fact that intent will often, but not always, be proven by circumstantial evidence does not demonstrate that the statute is either vague or overbroad.

**{¶45}** Furthermore, we note that the State produced direct evidence of Smith's intent. Abby testified that Smith stated he intended to use the batteries and pseudoephedrine pills to "cook" meth. And this constitutes direct evidence of Smith's intent to use the pills and batteries for the purpose of "cooking" methamphetamine.

**{¶46}** Smith argues that R.C. 2925.041 "fails to warn a citizen that innocent possession of a chemical or item may be a crime and leaves the decision of inferring who possesses a chemical and/or item legally [versus] illegally to the arbitrary and capricious determination of a law enforcement officer[.]" This is simply wrong; before Smith could be convicted of violating R.C. 2925.041, a petit jury had to find Smith proven guilty beyond a reasonable doubt as to all of the elements of the offense, including the intent to use the possessed chemicals to manufacture a controlled substance.

**{¶47}** Accordingly, we overrule Smith's second assignment of error.

IV. Prosecutorial Misconduct

**{¶48}** Next, Smith contends that the State committed prosecutorial misconduct both by referencing matters outside of the evidence and making inflammatory statements during closing argument.

**{¶49}** "A prosecutor's remarks constitute misconduct if the remarks were improper and if the remarks prejudicially affected an accused's substantial rights." *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, at ¶44, citing *State v. Smith* (1984), 14 Ohio St.3d 13, 14.

**{¶50}** "Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record." *State v. Harp*, Adams App. No. 07CA848, 2008-Ohio-3703, at ¶20, citing *State v. Lott* (1990), 51 Ohio St.3d 160, 166. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, at ¶92, quoting *Smith v. Phillips* (1982), 455 U.S. 209, 219. We must

"view the state's closing argument in its entirety to determine whether the allegedly improper remarks were prejudicial." *State v. Treesh*, 90 Ohio St.3d 460, 466, 2001-Ohio-4, citing *State v. Moritz* (1980), 63 Ohio St.2d 150, 157. We note that "[t]he prosecution is normally entitled to a certain degree of latitude in its concluding remarks." *Smith*, 14 Ohio St.3d at 13, citing *State v. Woodards* (1966), 6 Ohio St.2d 14, 26; *State v. Liberatore* (1982), 69 Ohio St.2d 583, 589. A prosecutor "may strike hard blows, [but] he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." *Berger v. United States* (1935), 295 U.S. 78, 88.

**{¶51}** First, Smith claims that there was no evidence he ever tampered with any evidence himself. And therefore, Smith maintains that the prosecutor committed prosecutorial misconduct in arguing that Smith had tampered with evidence. However, Abby Smith testified that Smith immediately disposed of methamphetamine after the phone conversation with Clark.

**{¶52}**    "Q.       Now, after he hung up the phone what did your father do?

**{¶53}**    A.       After he hung up the phone he went in the bathroom and flushed the dope that he had in his pocket.

**{¶54}**    * * *

**{¶55}**    Q.       We are talking about dope, but what is it in particular?

**{¶56}**    A.       Meth.

**{¶57}**    Q.       Methamphetamine?

**{¶58}**    A.       Yes." Trial Transcript at 328.

**{¶59}**     We therefore find that the record does contain some evidence that Smith tampered with evidence himself.

**{¶60}**     Smith next indicates that there was no evidence presented to prove he was going to use the batteries and the pseudoephedrine pills to make methamphetamine. However, the record supports the circumstantial evidence we referenced earlier; the fact the pills and batteries were thrown away, and the manner in which they were stored. Abby Smith also testified that:

**{¶61}**     "Q.        When he initially got the pills and the batteries did you hear your father make a statement about what he was going to do with them?

**{¶62}**     A.        Yeah, he said he was going to use them when he did his thing one time, to cook Meth one time."  Trial Transcript at 331.

**{¶63}**     Smith also claims that there was no proof he even knew how to make methamphetamine.  This, however, is not an element under R.C. 2925.041.  Smith may have failed or required further instruction before he could have successfully manufactured methamphetamine.  But this is only relevant to the extent it makes it more or less likely that he intended to manufacture methamphetamine with the items in question.  Here, the jury was unquestionably supplied with sufficient evidence to allow them to conclude that Smith intended to use the cold pills and lithium batteries for the production of methamphetamine.

**{¶64}**     Smith next maintains that that the prosecutor made several inflammatory statements that invited the jury to render a verdict based on an emotion rather than on the facts in evidence.  Smith identifies two statements:

**{¶65}**     "I don't know if I was in the same room yesterday or today as [Smith's

counsel].  Because the case I heard Harry Smith is a drug dealer.  He likes to sell

Methamphetamine, he likes to get kids hooked on it, mainly Abby Smith, and his son

who shows up at 136 Greystone Motel and gets tested the very next day for

Methamphetamine, amphetamine, opiates, marijuana, everything he can possibly be

tested for with the exception of Cocaine.  That is the kind of man I heard he is."  Trial

Transcript at 472.

**{¶66}**     "As a good friend of mine, Fred Johnson, said, when you lay down with dogs

you get up with fleas.  Unfortunately, he's a dog, and there is a lot of fleas.  But, you can

do one thing.  If you don't mind Methamphetamine on the streets of Highland County let

him go.  But, if you want to stop Methamphetamine on the streets of Highland County

convict him."  Trial Transcript at 477-78.

**{¶67}**     Because Smith failed to object at trial to these allegedly improper comments

by the prosecution, he has waived all but plain error.  Crim.R. 52(B); *State v. Slagle*

(1992), 65 Ohio St.3d 597, 604.  Pursuant to Crim.R. 52(B), we may notice plain errors

or defects affecting substantial rights.  "Inherent in the rule are three limits placed on

reviewing courts for correcting plain error."  *State v. Payne*, 114 Ohio St.3d 502, 2007-

Ohio-4642, at ¶15.  "'First, there must be an error, *i.e.,* a deviation from the legal rule. * *

* Second, the error must be plain.  To be 'plain' within the meaning of Crim.R. 52(B), an

error must be an 'obvious' defect in the trial proceedings. * * * Third, the error must have

affected 'substantial rights.'  We have interpreted this aspect of the rule to mean that the

trial court's error must have affected the outcome of the trial.'"  Id. at ¶16, quoting *State*

*v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68 (omissions in original).  We will notice

plain error "only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, at paragraph three of syllabus. And "[r]eversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 2001-Ohio-141, citing *Long* at paragraph two of the syllabus. We note that "[i]solated comments by a prosecutor are not to be taken out of context and given their most damaging meaning." *State v. Carter*, 89 Ohio St.3d 593, 603, 2000-Ohio-172, citing *Donnely v. DeChristoforo* (1974), 416 U.S. 637, 647; *State v. Hill*, 75 Ohio St.3d 195, 204, 1996-Ohio-222.

**{¶68}** In reviewing the record, we do not find that the trial court committed plain error by allowing these statements. Both of these statements arguably went too far. The first indicates that Smith enjoyed addicting children to methamphetamine. There certainly was some evidence admitted demonstrating that Smith's children were both addicted to drugs. Furthermore, this evidence supported the reasonable inference that Smith was in some measure responsible for the delinquent behavior of his children. But there was no evidence that indicated that Smith enjoyed or plotted such an outcome. The second statement is close to a "send a message" type of argument. See *State v. Turner*, Scioto App. No. 08CA3234, 2009-Ohio-3114, at ¶47. Those arguments typically rely on community outrage and invite the jury to render a verdict based on the outrage rather than the facts of the case. We note that the State has a credible argument that this statement is not a send-a-message type of argument. But given the standard of review applicable here, we need not determine whether the statement was in fact misconduct. So for the purposes of this opinion, we presume, but do not decide, that both of these statements exceeded permissible bounds. However, these are the

only two statements that Smith points to out of the entirety of the prosecutor's closing argument. And having read the entirety of the prosecution's closing argument, we find that it focused on the facts and law of the case, and we conclude that, while these two isolated comments may be error, they are not plain and do not affect Smith's substantial rights.

**{¶69}** Smith also asserts that the prosecution wrongfully withheld exculpatory evidence. "In this case the State of Ohio violated Mr. Smith's due process rights by failing to inform the defense until the middle of trial that fingerprints had been found on a number of items which were alleged to have been possessed by Mr. Smith, including cold pills, batteries, and scales."

**{¶70}** "The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *State v. Johnston* (1988), 39 Ohio St.3d 48, at paragraph four of the syllabus, following *Brady v. Maryland* (1963), 373 U.S. 83. The defendant has the burden of proving a *Brady* violation involving a denial of due process. See *State v. Jackson* (1991), 57 Ohio St.3d 29, 33.

**{¶71}** "In determining whether the prosecution improperly suppressed evidence favorable to an accused, such evidence shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. This standard of materiality applies regardless of whether the evidence is specifically, generally or not at all requested by

the defense." *Johnston* at paragraph five of the syllabus, following *United States v. Bagley* (1985), 473 U.S. 667.

**{¶72}** Detective Richard Warner testified that there were some partial fingerprints present on the relevant pieces of evidence, but he also testified that these fingerprints were insufficient for testing purposes. Smith speculates that a defense expert could have been retained who might have been able to lift some usable latent prints from the evidence.

**{¶73}** We find that Smith fails to establish the material nature of this evidence. The State's own theory of the case was that Wesley Smith was the last person, other than the police, to possess the batteries and pills. The State's theory did not rely on any argument that Smith had exclusive possession of the batteries or pills. Therefore, the fact that Wesley Smith's fingerprints or some other third party's fingerprints may have been on the pills or batteries would have been unlikely to change the outcome of the proceeding, even if we presume any fingerprints, other than Smith's, could be lifted. Therefore, any failure to disclose on the part of the State was not in regard to material evidence.

**{¶74}** In conclusion, after reviewing the entire record, we find that the prosecutor's conduct did not deprive Smith of a fair trial.

**{¶75}** Accordingly, we overrule Smith's third assignment of error.

V. Amendment of the Indictment

**{¶76}** Next, Smith contends that the trial court erred because it allowed the State to amend the indictment. "[N]o person shall be held to answer for a capital, or otherwise infamous, crime, unless on presentment or indictment of a grand jury[.]" Section 10,

Article 1, Ohio Constitution.  This requirement affords the accused adequate notice and an opportunity to defend, and it also enables the accused to protect himself from any future prosecutions for the same offense.  *State v. Sellards* (1985), 17 Ohio St.3d 169, 170.  As a result, the government must aver all material facts constituting the essential elements of the offense.  Id.

{¶77}     "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged."  Crim.R. 7(D).

{¶78}     "Whether an amendment changes the name or identity of the crime charged is a matter of law."  *State v. Kittle*, Athens App. No. 04CA41, 2005-Ohio-3198, at ¶12 (citations omitted).  Hence, our standard of review is de novo.  See *Nicholas v. Hanzel* (1996), 110 Ohio App.3d 591, 599.

{¶79}     The indictment clearly alleged that Smith had trafficked in drugs by trafficking in methamphetamine, a schedule II controlled substance.  R.C. 3719.41, schedule II, (C)(2).  Trafficking in drugs, as opposed to aggravated trafficking in drugs, is for offenders who have trafficked in schedule III, IV, or V controlled substances.  R.C. 2925.03(C)(2).  The original indictment was therefore in error when it named the offense trafficking in drugs.

{¶80}     The amendment changed the name of the offense in violation of Crim.R. 7(D) because the indictment alleged "trafficking in drugs" but the amendment alleged "aggravated trafficking in drugs."  See *State v. Davis*, 121 Ohio St.3d 239, 2008-Ohio-

4537, at ¶8 (indicating that trafficking in drugs is a lesser offense compared to aggravated trafficking in drugs), citing *State v. Headley* (1983), 6 Ohio St.3d 475, 479. Here, we agree with the State that the error is almost certainly of a technical and inadvertent nature. Furthermore, it is unlikely that Smith suffered any actual prejudice in the preparation of his defense because of this amendment. However, this amendment changed the name of the offense, and so the amendment is prohibited by Crim.R. 7(D). Civ.R. 7(D). See *State v. Davis*, Highland App. No. 06CA26, 2007-Ohio-2249, at ¶25 (Defendant "need not demonstrate that he suffered any prejudice as a result of the forbidden amendment.").

**{¶81}** We therefore sustain Smith's fourth assignment of error, and vacate his conviction for aggravated trafficking of methamphetamine in the vicinity of a juvenile.

## VI. Suppression of Evidence

**{¶82}** First, Smith contends that the warrant was not supported by probable cause and that the warrant was overbroad. Appellate review of a decision on a motion to suppress evidence presents mixed questions of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, citing *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119. See, also, *State v. Hurst*, Washington App. No. 08CA43, 2009-Ohio-3127, at ¶57. At a suppression hearing, the trial court assumes the role of trier of fact, and as such, is in the best position to resolve questions of fact and evaluate witness credibility. See *State v. Carter*, 72 Ohio St.3d 545, 552, 1995-Ohio-104. A reviewing court must accept a trial court's factual findings if they are supported by some competent, credible evidence. *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594; *Hurst* at ¶57. The reviewing court then applies the factual findings to the law regarding

suppression of evidence.  An appellate court reviews the trial court's application of the law de novo.  *State v. Anderson* (1995), 100 Ohio App.3d 688, 691; *Hurst* at ¶57.

**{¶83}**      The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution both provide the "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *."  Furthermore, both constitutional provisions further provide that "no warrants shall issue, but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the persons or things to be seized."  Fourth Amendment to the United States Constitution.  See, also, Section 14, Article I of the Ohio Constitution.

**{¶84}**      Probable cause is a lesser standard of proof than that required for a conviction, such as proof beyond a reasonable doubt or by a preponderance of the evidence.  *State v. Young* (2001), 146 Ohio App.3d 245, 254, citing *State v. George* (1989), 45 Ohio St.3d 325, 329; *Illinois v. Gates* (1983), 462 U.S. 213, 235.  Probable cause only requires the existence of circumstances that warrant suspicion.  *Young* at 254.  Thus, "the standard for probable cause requires *only* a showing that a probability of criminal activity exists, *not* a prima facie showing of criminal activity."  Id., citing *George* at 329.  "Hearsay may serve as the basis for the issuance of a warrant as long as there is a substantial basis for crediting the hearsay."  *State v. Underwood*, Scioto App. No. 03CA2930, 2005-Ohio-2309, at ¶16, citing *United States v. Ventresca* (1965), 380 U.S. 102, 108.

**{¶85}**      Crim.R. 41(C) provides the procedure for issuing a search warrant.  In deciding whether to issue a search warrant, the issuing magistrate must scrutinize the affidavit in support of the warrant.  Then the magistrate must make a practical, common

sense decision, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, whether "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *George* at paragraph one of syllabus, quoting *Gates* at 238-239.

{¶86} "In deciding whether an affidavit submitted in support of a search warrant sufficiently supports a finding of probable cause, a reviewing court must give great deference to the issuing magistrate's determination." *State v. Oros*, Pickaway App. No. 07CA30, 2008-Ohio-3885, at ¶18, citing *George* at paragraph two of the syllabus. "Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *Ventresca* at 109.

{¶87} Here, the relevant provisions of the affidavit are as follows:

{¶88} "On May 15, 2009 early morning hours Lt[.] Alexander with the Highland County watched a female leave room 136, [Greystone Motel] and get into a white escort. The vehicle left the parking lot and a traffic stop was conducted. The driver was found to be Miranda A Johnson * * * [, and t]he passenger in the vehicle was a James W Clark Jr. Permission to search was granted to Lt. Alexander. Located in Mr. Clark's left fro[nt] pants pocket was a plastic containe[r] with (4) four sep[a]rate baggies that appeared to have methamphetamine in them. Upon questioning Mr. Clark and Ms. Johnson both indicated that they had just left the [Greystone Motel] as they had met with a guy named Harry. Mr. Clark stated that the methamphetamine was given to him by Harry Smith to transport to a guy on Lois Lane at the Rocky Fork Lake.

**{¶89}**        * * *

**{¶90}**        On May 14, 2009 the Highland County Sheriff's Office received two different calls from concern[ed] citizens that stated Harry Smith and Chris Magee were staying at the [Greystone Motel] and were involved in methamphetamine [trafficking].

**{¶91}**        On May 14, 2009 investigators with the Highland County Sheriff's Office looked into this information and found that Harry Smith and Chris Magee were staying in room 136 at the [Greystone Motel].  Upon watching this location investigators noticed a large amount of traffic in and out of room 136."

**{¶92}**        Smith claims that the affidavit does not establish the reliability or credibility of any of the informants listed and that, under the Fourth Amendment, these concerns are highly relevant for a magistrate's probable cause determinations.  See *State v. Evans*, 67 Ohio St.3d 405, 411, fn. 2, 1993-Ohio-186, citing *Gates* at 230.  Smith is perfectly correct that the anonymous phone calls are of marginal assistance in determining probable cause.  "Probable cause exists where 'the facts and circumstances within * * * [the officers'] knowledge, and of which they had reasonably trustworthy information, [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed."  *State v. Miller* (May 23, 2001), Summit App. No. 20227, quoting *Brinegar v. United States* (1949), 338 U.S. 160, 175-76 (other citations omitted).

**{¶93}**        Here, based on the affidavit, the police received anonymous tips indicating that Smith was involved in trafficking methamphetamine out of room 136 of the Greystone Motel.  The affiant, Detective Croy, personally observed an unusually high amount of foot traffic entering and leaving that room.  Later, other officers observed a

car leave the location.  The officers stopped the vehicle and discovered that the

occupant possessed what appeared to be methamphetamine.  The occupant then

stated that Smith gave the occupant the methamphetamine at the location the police

saw the vehicle depart from.  The police were also aware that Smith had prior

convictions for drug trafficking.

**{¶94}**      Under these circumstances, a man of reasonable caution would be warranted

in believing that evidence of a crime could be found at room 136 of the Greystone

Motel.  We therefore find that probable cause supported the issuance of this warrant.

**{¶95}**      Smith also asserts at several points that the warrant is overbroad.  This

appears to be an argument that the warrant fails to state the items to be seized or

places to be searched with sufficient particularity.  However, Smith never actually details

an argument based on the particularity requirement of the Fourth Amendment.  "'If an

argument exists that can support [an] assignment of error, it is not this court's duty to

root it out.'"  *Thomas v. Harmon*, Lawrence App. No. 08CA17, 2009-Ohio-3299, at ¶14,

quoting *State v. Carman*, Cuyahoga App. No. 90512, 2008-Ohio-4368, at ¶31.  The

warrant commanded the police to search the persons of the room and the room for:

"Any firearms or dangerous ordnances as defined in 2923.11 of the revised code[;] any

marijuana, methamphetamine or other controlled substances[;] any other items,

devices, and any other drug paraphernalia used to purchase, cultivate, manufacture,

distribute, sell, or abuse any drug of abuse or controlled substances[;] any

documentation, photographs, video, film, or items showing ownership of residence,

premises or control over said drugs of abuse, firearms, drug paraphernalia, any

computer equipment used to keep records of any type of drug transactions." We can see no specific grounds for challenging this clause on the basis of particularity.

**{¶96}** Next, Smith contends that the police violated his rights by ordering the occupants of room 136 out of the motel several hours before the judge issued the actual warrant. Here, the police, in effect, arrested the occupants of the room and kept them under arrest in order to prevent the destruction of evidence or flight. Even should we presume that the police violated Smith's rights during this detention, nonetheless Smith fails to point to any evidence seized during this detention. The affidavit contains no information generated as a result of this detention. And the affiant testified at the suppression hearing that he conveyed nothing to the magistrate in addition to what was in the affidavit. Transcript to the Suppression Hearing at 20. The police apparently only searched Smith's person after the magistrate issued the warrant. Trial Transcript at 237. Since the police discovered no evidence through this alleged constitutional violation, there is nothing to suppress. And we need not decide whether these arrests were justified or not.

**{¶97}** Accordingly, we overrule Smith's fifth assignment of error.

### VII. Due Process

**{¶98}** Finally, Smith contends in his sixth assignment of error that the trial court committed several errors that denied him the due process of law.

**{¶99}** Smith first contends that the trial court denied him access to the courts because the trial court prevented him from making motions on his own behalf and ordering that his filings not be accepted and filed. The trial court did make statements along these lines during the arraignment proceeding. However, the trial court did so

because Smith completed an affidavit of indigency and requested appointed counsel. We review this issue with a de novo standard of review. See *State v. Keenan*, 81 Ohio St.3d 133, 138, 1998-Ohio-459 (considering an assigned error based on hybrid representation without reference to discretion or other express standard of review).

**{¶100}** In effect, the trial court refused to hear Smith's motions for two reasons. First, the only scheduled reason for the hearing was an arraignment, and Smith wanted to proceed on issues not appropriate to such a hearing, e.g., motions to dismiss the indictment and motions to suppress evidence. See Crim.R. 10(A) (discussing what an arraignment hearing consists of). Second, the trial court indicated that the trial court would refuse to consider motions filed by Smith because the court was appointing counsel to represent him. We are satisfied that the trial court did not err as, although a defendant "has the right either to appear pro se or to have counsel, he has no corresponding right to act as co-counsel on his own behalf." *State v. Thompson* (1987), 33 Ohio St.3d 1, 6-7.

**{¶101}** Smith next claims that the trial court violated his right to due process by limiting the scope of his counsel's questioning during the suppression hearing. At the suppression hearing, the trial court prevented defense counsel from questioning the accuracy of the affidavit. "Well, you didn't file an affidavit alleging that there was any false information in the affidavit [supporting the warrant]. The affidavit speaks for itself. If you're going to challenge the veracity of it then you have not followed the proper procedure to do that." Transcript of Suppression Hearing at 13.

**{¶102}** "To successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant

made a false statement, either intentionally, or with reckless disregard for the truth."
*State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶31 (internal quotations omitted).  "A defendant who seeks to overcome the presumption of validity accorded a warrant affidavit by making a substantial preliminary showing of a knowing, intentional, or reckless falsity, has, under [*Franks v. Delaware* (1978), 438 U.S. 154], the task of supporting his allegations by more than conclusional accusations, or the mere desire to cross-examine.  Instead, a challenge to the factual veracity of a warrant affidavit must be supported by an offer of proof which specifically outlines the portions of the affidavit alleged to be false, and the supporting reasons for the defendant's claim.  This offer of proof should include the submission of affidavits or otherwise reliable statements, or their absence should be satisfactorily explained."  *State v. Roberts* (1980), 62 Ohio St.2d 170, 177-78.  A defendant must make this showing before he or she is "entitled to a hearing to challenge the veracity of the facts set forth in the warrant affidavit[.]"  Id. at 177.  The standard of review is unclear for whether a defendant has successfully made a substantial preliminary showing sufficient to entitle the defendant to a hearing on the veracity of the search warrant.  See *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, at ¶77-80 (considering an assigned error on this ground without reference to discretion or any other standard of review); *Roberts* at 178 (same); *State v. Sebastian*, Highland App. No. 08CA19, 2009-Ohio-3117, at ¶26-30 (same).  See, also *United States v. Fowler* (C.A.6, 2008), 535 F.3d 408, 415, fn. 2 (noting that the standard of review for the denial of a hearing under *Franks* is unsettled but that the court would apply a de novo standard).  In this case, much like *Fowler*, it makes little difference what standard we use.  And so, we apply the standard most favorable to Smith, de novo.

**{¶103}** In this case, the trial court correctly stated the law. If Smith wished a hearing to determine the accuracy of the affidavit, then Smith had an obligation to make a substantial preliminary showing. Here, Smith's motion merely alleged that the warrant's affidavit did not support probable cause, the warrant was overbroad, and the good faith exception did not apply. To the extent Smith's motion raised those issues, the trial court permitted Smith's counsel to inquire on them.

**{¶104}** Additionally, a defendant must give the prosecution notice of his proposed grounds for the suppression of the evidence. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218-19. Thus, we find that the trial court did not err by limiting the scope of Smith's counsel's examination during the suppression hearing.

**{¶105}** Accordingly, we overrule Smith's sixth assignment of error.

VIII.

**{¶106}** We overrule Smith's first, second, third, fifth, and sixth assignments of errors, and we sustain Smith's fourth assignment of error. Thus, we affirm in part and reverse in part the judgment of the trial court.

**JUDGMENT AFFIRMED IN PART,**
**REVERSED IN PART AND**
**CAUSE REMANDED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN

PART AND CAUSE REMANDED, and Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the

Highland County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule

27 of the Rules of Appellate Procedure.  Exceptions.


Harsha, J.:  Concurs in Judgment and Opinion.
McFarland, P.J.:  Concurs in Judgment Only.


For the Court


BY:_____
        Roger L. Kline, Judge



**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**