OPINION
{¶ 1} Defendant-appellant, Douangmala Dovangpraseuth, appeals from a judgment of the Franklin County Municipal Court convicting her of soliciting for prostitution, a violation of Columbus City Code 2307.24 and a misdemeanor of the first degree. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} By separate complaints filed in the Franklin County Municipal Court, defendant was charged with prostitution, a violation of Columbus City Code 2307.25(A), and soliciting for prostitution, a violation of Columbus City Code 2307.24(A). Defendant pled not guilty to these charges and demanded a jury trial.
 {¶ 3} By jury verdict, defendant was found guilty of soliciting for prostitution; however, the jury did not find defendant guilty of prostitution. Finding defendant guilty of soliciting for prostitution, the trial court ordered defendant to serve a six-day jail sentence with a credit of two days for time already served. The trial court also ordered defendant to pay a $100 fine and court costs.
 {¶ 4} From the trial court's judgment, defendant later moved for leave to file a delayed appeal. By judgment entry, this court granted defendant's motion.
 {¶ 5} Defendant assigns two errors for our consideration:
FIRST ASSIGNMENT OF ERROR
The Trial Court erred in failing to instruct the jury that for purposes of the the [sic] offense of soliciting for prostitution "Solicited" means enticed, urged, lured or asked. "Solicited" does not mean to have agreed to engage in sexual activity for hire.
SECOND ASSIGNMENT OF ERROR
The Trial Court erred in failing to provide the jury the instruction of:
AGREEING TO ENGAGE IN SEXUAL ACTIVITY FOR HIRE. It is not a crime to agree to engage in sexual activity for hire. When a defendant agrees to what is suggested by the officer he (she) can not be found guilty of soliciting. The crime is in the asking.
 {¶ 6} Because defendant's assignments of error are interrelated, we will jointly address them.
 {¶ 7} At trial, the state offered as a prosecution witness, Detective Richard L. Stevens of the Columbus Division of Police (Tr. 120), who was assigned to the Intelligence Bureau section of the vice unit. (Tr. 121.) Portions of audiotapes were also played at trial. (Tr. 145, 146, 158.)[1]
 {¶ 8} Detective Stevens testified that, according to operating procedures, vice officers do not work alone. (Tr. 126.) Rather, according to Detective Stevens, an investigating officer always has at least one partner and, in the investigation of suspected prostitution, an attempt is made to have audio monitoring. (Id.) Detective Stevens testified that as soon as an investigator has obtained the elements of a crime, then an operation is terminated. (Tr. 128.) According to Detective Stevens, standard operating rules for the vice unit permit vice officers to have brief "sexual contact" during an investigation but these rules do not permit "sexual conduct." (Tr. 140.) According to Detective Stevens, "sexual contact" means contact with an erogenous zone, while "sexual conduct" includes behavior such as "oral sex." (Id.)
 {¶ 9} Detective Stevens testified that during the afternoon of August 20, 2004, he assisted in the investigation of suspected prostitution at the Jades Clinic on East Dublin Granville Road in the city of Columbus, Ohio. (Tr. 123-125, 126, 142.) According to Detective Stevens, on the day of the investigation he wore casual clothing and presented himself as a customer. (Tr. 125.) Detective Stevens testified that, during the investigation of the Jades Clinic, he carried a wireless audio device, a Kell unit, which was disguised and which transmitted to an outside recording device, where two other officers monitored the transmission. (Tr. 127, 147.) Detective Stevens testified that he was instructed to set the Kell unit in the open where it could pick up any voice or audio communications. (Tr. 127.)
 {¶ 10} Prior to this investigation, Detective Stevens had never been to the Jades Clinic. (Tr. 125-126, 129.) According to Detective Stevens, after entering the clinic, he came upon a vestibule area. (Tr. 129.) He rang the buzzer on the wall. (Id.) After Detective Stevens rang the buzzer, defendant opened the door and instructed him to follow her. (Id.) Defendant led Detective Stevens down a hallway that had doors with numbers on them. (Tr. 130.) After leading Detective Stevens into a room that had a massage table, a nightstand-type table, and a bar stool, defendant inquired of Detective Stevens whether he wanted a massage. (Id.) Detective Stevens answered affirmatively and agreed to a one-hour massage for $60. (Id.)
 {¶ 11} Detective Stevens purposely opened his wallet in front of defendant who was standing beside him; the wallet contained several hundred dollars in cash that was issued by the city for the investigation and also contained some personal funds. (Tr. 131, 153, 163-164.) Detective Stevens paid defendant $60. According to Detective Stevens, defendant instructed him to disrobe and to put on a towel and that she would return. (Tr. 131.)
 {¶ 12} After defendant exited the room with the $60, Detective Stevens undressed, laid his clothes on the stool beside the table, and purposely put the Kell unit on top so it was in the open and not blocked. After disrobing, Detective Stevens put a towel on and sat on the massage table. (Id.)
 {¶ 13} According to Detective Stevens, defendant returned a few minutes later. (Id.) Defendant then asked Detective Stevens if he wanted a shower, and Detective Stevens answered affirmatively. (Tr. 132.) According to Detective Stevens, defendant then led him down a hallway while he was clothed only with a towel. (Id.) Defendant and Detective Stevens then entered a room in which there was a padded vinyl table and a large 30-40-gallon tub of hot water. (Id.) Defendant instructed him to lie on his stomach on the table. (Id.) Defendant then removed the towel, put ladles of water on Detective Stevens, applied soap, and washed him; after Detective Stevens turned over, defendant repeated this procedure. (Id.) During the bathing process, defendant touched Detective Stevens' penis. (Tr. 139.) After rinsing Detective Stevens, Detective Stevens stood up and defendant dried him with the towel. (Tr. 132.) Detective Stevens testified: "While she was drying me, drying my entire body, she made the statement, is he okay, referring to my penis. She looks at it and nodded, and I said yes. So after she dried me off, she led me back to the room, and that's when the massage took place." (Tr. at 133.)
 {¶ 14} After returning to the massage room, defendant then instructed Detective Stevens to lie on his stomach in the nude, and defendant picked up some type of lotion and began massaging him from head to toe. (Tr. 131-132, 133.) At this time, defendant was clothed and covered. (Tr. 132.)
 {¶ 15} According to Detective Stevens, during the massage "role-playing" occurred. (Tr. 133.) Detective Stevens began a game where he attempted to guess defendant's name. (Id.) Detective Stevens also inquired about defendant's birth date and astrological sign. (Tr. 133-134.) Detective Stevens made up a story that he had a friend who came to the clinic and that his friend "told me everything" and "told me everything goes on" at the clinic. (Tr. 134.) According to Detective Stevens, in response to his story about his friend, defendant "giggled and laughed" and stated, "`So he kisses and tells.'" (Id.)
 {¶ 16} While defendant was massaging Detective Stevens, he inquired as to whether defendant gave massages while she was nude. (Id.) Defendant answered affirmatively and stated that there was a $60 charge for that service. (Id.) Detective Stevens agreed to have defendant massage him while she was nude and, after defendant retrieved Detective Stevens' wallet for him, he paid defendant an additional $60. (Id.) Defendant then left the room with the money and returned a few minutes later. (Id.)
 {¶ 17} According to Detective Stevens, when defendant returned, she disrobed without hesitation. (Tr. 134-135.) Detective Stevens testified that when he saw that defendant had undressed, he turned over to lay on his stomach. (Tr. 135.) Detective Stevens stated that defendant then got on top of his back, sat on his back, resumed massaging him, and rubbed his lower back with her pubic area. (Tr. 135-136.)
 {¶ 18} Detective Stevens testified:
From there, just basic conversation took place, and she asked — stated did I want more, and I asked her what she meant, and she says, "Everything." I asked her what she meant by everything. She made the statement sex and fellatio. I asked her how much. She said $160.
(Tr. 136.)
 {¶ 19} According to Detective Stevens, at some point his cell phone rang, apparently after he had paid defendant $160 and while defendant had exited the room with the money. (Tr. 137-138.) Detective Stevens testified that Detective Jardine, who was in a van outside the clinic and monitoring the audio transmission, called to inform him that there was interference with the audio transmission. (Tr. 137.) Detective Stevens testified that "[s]ince I was so close, I said, give me five minutes to get the elements, I almost have the elements. And he said okay, he would call right back." (Id.) According to Detective Stevens, although at that time he obtained elements to support a soliciting charge, he wanted to gather further evidence to support a charge for prostitution. (Tr. 162-163.)
 {¶ 20} Detective Stevens testified that he gave $160 to defendant "[a]fter — [a]fter I sat up, before she laid down" (Tr. 137), and after defendant had made the statement concerning "everything" and "sex and fellatio." (Tr. 138.)
 {¶ 21} Detective Stevens also testified:
While [defendant] was massaging me, she did touch my pubic area. I immediately kind of sat up, which she then laid down. And then I — before anything went further, I said, "Well, how about I give you a massage?" And she was laying on her stomach, and I rubbed her back. She's giggling and stuff.
(Tr. 136.)
 {¶ 22} After the exchange of money, defendant covered herself with a towel, left the room with the money, and returned to the massage room. (Tr. 138.) Upon returning to the room, defendant removed the towel that had been covering her, got back on the table, and lay down. (Id.) According to Detective Stevens, it was then that he inquired whether he should give defendant a massage and she giggled and laughed in response. (Id.) Detective Stevens testified that from the time that he gave $160 to defendant until the time that the interaction between him and defendant ended, defendant did not indicate that she did not want to have sex with Detective Stevens or that she did not want to give oral sex. (Tr. 143-144.)
 {¶ 23} According to Detective Stevens, while he was speaking on the telephone a second time with Detective Jardine, he noticed that defendant had a condom and that she attempted to put the condom on him while he was speaking on the telephone. (Tr. 137, 139, 141.) Detective Stevens testified:
While I was on — When I was on the phone the second time, I was standing. And like I said, while I was talking, I noticed that she had something in her hands that happened to be a rolled-up condom. She attempted, by touching my penis, to put it on. I immediately turned away, told her I have to go, I have an emergency. * * *
(Tr. 141.)
 {¶ 24} According to Detective Stevens, defendant "was very disappointed" when he informed her that he had to leave (Tr. 139, 141, 144) and she stated that "[y]ou come right back." (Tr. at 139, 141.) Defendant next assisted Detective Stevens with dressing, and he then exited the clinic. (Id.)
 {¶ 25} On cross-examination, Detective Stevens admitted that, prior to leaving the clinic, he attempted to convince defendant to meet him after she left work and also attempted to give his telephone number to defendant. (Tr. 161-162.) On redirect examination, when asked what was the purpose of asking defendant to meet him after work, Detective Stevens testified:
Well, the focus of the case is on the business, not the individuals working there. And if I would have arranged for her to meet me after work, then she would have been arrested. We read them their rights and when we interview them and possibly get information that would help us out, further the investigate [sic].
(Tr. 169.)
 {¶ 26} After leaving the clinic, Detective Stevens met two other detectives a few blocks away. (Tr. 141.) According to Detective Stevens, a few days later a search warrant was executed at the clinic. (Tr. 153.)
 {¶ 27} Following the close of the state's case in chief, defendant moved for acquittal pursuant to Crim.R. 29, and the trial court overruled this motion. (Tr. 172.) Thereafter, satisfied with the state of the evidence, defendant offered no contrary evidence. (Tr. 173.)
 {¶ 28} At the close of evidence, defendant proposed the following instruction as to the charge of soliciting for prostitution:[2]
1. The defendant is charged with soliciting. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 20th day of August, 2004, and in the City of Columbus, Ohio, the defendant (A) solicited another to engage in sexual activity for hire.
2. SOLICITED. "Solicited" means enticed, urged, lured or asked. "Solicited" does not mean to have agreed to engage in sexual activity for hire.
3. SEXUAL ACTIVITY. "Sexual activity" means sexual conduct or sexual contact, or both.
4. AGREEING TO ENGAGE IN SEXUAL ACTIVITY FOR HIRE. It is not a crime to agree to engage in sexual activity for hire. When a defendant agrees to what is suggested by the officer he (she) can not be found guilty of soliciting. The crime is in the asking.
See State v. Swain [sic], 142 Ohio App 3d 88, 2001 Ohio App Lexis 1477 (2001) State v. Howard, 7 Ohio Misc. 2d 45 (1983)[.]
2. The Defendant has been charged with violating Columbus Code Sections 2307.24, Soliciting for Prostitution and 2307.25, Engaging in Prostitution you may consider the fact that the [sic] Ms. Dovangpraseuth has never been convicted of such an offense in support of her innocence.
See R.C. 2907.26[.]
(Proposed Jury Instructions, filed December 7, 2004.)
 {¶ 29} The trial court, however, did not adopt this proposed jury instruction by defendant.[3] Rather, having previously instructed the jury about reasonable doubt, the trial court instructed the jury as to the charge of soliciting for prostitution, as follows:
In one of the complaints, Ms. Dovangpraseuth is charged with soliciting for prostitution.
Before you can find Ms. Dovangpraseuth guilty of soliciting for prostitution, you must find beyond a reasonable doubt that on or about the 20th day of August, 2004, in Columbus, Franklin County, Ohio, Ms. Dovangpraseuth, solicited another to engage with such other person in sexual activity for hire.
"Solicit" means to entice, urge, lure or ask.
"Sexual Activity" includes sexual conduct or sexual contact or both.
"Sexual Conduct" means vaginal intercourse between a male and female, and anal intercourse, fellatio, and cunnilingus between persons regardless of sex.
"Sexual Contact" means any touching of an erogenous zone of another, including, without limitation, the thigh, genitals, buttocks, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
"For hire" means for pay or compensation.
If you find that the City proved beyond a reasonable doubt all the essential elements of the offense of soliciting for prostitution, your verdict must be guilty. If you find that the City failed to prove beyond a reasonable doubt any one of the essential elements of the offense of soliciting for prostitution, then your verdict must be not guilty as to that charge.
(Written Jury Instructions; Tr. 217-218.)
 {¶ 30} A trial court has broad discretion in instructing a jury. State v. Smith (Apr. 2, 2002), Franklin App. No. 01AP-848, citing Jenkins v. Clark (1982), 7 Ohio App.3d 93. InState v. Joy (1995), 74 Ohio St.3d 178, the Supreme Court of Ohio instructed: "The rule regarding jury instructions is that requested instructions in a criminal case must be given when they are correct, pertinent, and timely presented." Id. at 181, citingCincinnati v. Epperson (1969), 20 Ohio St.2d 59, paragraph one of the syllabus, overruled in part on other grounds, State v.Carter (1995), 72 Ohio St.3d 545, paragraph one of the syllabus. The Joy court further instructed: "The court must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder." Id. at 181, citing State v. Comen (1990), 50 Ohio St.3d 206, paragraph two of the syllabus. See, also, Smith, supra, citingMurphy v. Carrollton Mfg. Co. (1991), 61 Ohio St.3d 585, 591
(stating that requested jury instructions ordinarily should be given if they are correct statements of law, applicable to the facts of the case, and reasonable minds might reach the conclusion sought by the specific instruction).
 {¶ 31} When reviewing a trial court's refusal to give a requested jury instruction, an appellate court considers whether the trial court's refusal constituted an abuse of discretion under the facts and circumstances of the case. Smith, supra, citing State v. Wolons (1989), 44 Ohio St.3d 64, 68. "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Wolons, at 68, quoting Statev. Adams (1980), 62 Ohio St.2d 151, 157.
 {¶ 32} "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue." Murphy, supra, at 591, citing Riley v. Cincinnati
(1976), 46 Ohio St.2d 287. "`In reviewing a record to ascertain the presence of sufficient evidence to support the giving of a[n] * * * instruction, an appellate court should determine whether the record contains evidence from which reasonable minds might reach the conclusion sought by the instruction.'" Murphy, at 591, quoting Feterle v. Huettner (1971), 28 Ohio St.2d 54, syllabus.
 {¶ 33} Here, we find no evidence to support the following proposed instruction: "When a defendant agrees to what is suggested by the officer he (she) can not be found guilty of soliciting." At trial, Detective Stevens testified that while defendant was nude and massaging Detective Stevens' back, defendant inquired of Detective Stevens whether he "want[ed] more." (Tr. 136.) When Detective Stevens inquired what she meant, defendant stated "everything," and "[s]he made the statement sex and fellatio," for a price of $160. (Tr. 136.) No contrary evidence was presented to rebut this testimony. Thus, according to the evidence, Detective Stevens was the solicitee, not the solicitor for sexual activity.[4]
 {¶ 34} Under these facts and circumstances, we cannot conclude that reasonable minds could reach the conclusion that is sought by defendant's proposed instruction; namely, that defendant could not be found guilty of soliciting if she agreed to what a law enforcement officer suggested. Here, although Detective Stevens solicited a nude massage, Detective Stevens did not solicit defendant to engage in sexual activity for hire.
 {¶ 35} Moreover, we cannot agree that the trial court's refusal to instruct the jury that "`[s]olicited' does not mean to have agreed to engage in sexual activity for hire" constitutes reversible error. Because the relevant factual inquiry is whether beyond a reasonable doubt defendant's conduct rose to the level of enticing, urging, luring, or asking the detective to engage in sex for hire and not whether defendant agreed to engage in sex for hire, we find that the proposed jury instruction was not relevant and necessary for the jury to discharge its duty as the fact finder. Accordingly, we do not conclude that the trial court abused its discretion by refusing to instruct the jury as defendant proposed, namely that "`[s]olicited' does not mean to have agreed to engage in sexual activity for hire."
 {¶ 36} Finally, we find unpersuasive defendant's contention that the trial court erred by not relying upon Howard, supra, a Hamilton County Municipal Court case and Swann, supra, a case from the First District Court of Appeals. "While it is not improper for a trial court to rely on an appellate decision from another district as persuasive authority, such a decision, whether reported or not, is not controlling authority."Stapleton v. Holstein (1998), 131 Ohio App.3d 596, 598. Therefore, applying Stapleton to the facts of this case, asHoward and Swann are cases from another district, neitherHoward nor Swann were controlling authority as to the trial court.
 {¶ 37} In Howard, the Hamilton County Municipal Court found a defendant not guilty of soliciting under former R.C.2907.24(A). Under the facts of Howard, the following occurred:
The dialogue between the undercover policeman and the defendant took place on May 7, 1983 at approximately 3:00 a.m. on Vine Street. The policeman approached the defendant standing on or near the curb and said, "Are you dating?" The defendant responded, "Do you have any money?" The policeman's response was, "Is $15.00 enough?" The defendant replied affirmatively. The officer's next statement was "What will you do?" The defendant's answer was "anything." "Oral sex?" asked the officer. The defendant agreed, got into the car and was promptly arrested and charged with the offense of soliciting.
Id. at 45.
 {¶ 38} Construing former R.C. 2907.24, the Howard court found that the definition of "solicit" as contained in a former version of 4 Ohio Jury Instructions, Section 507.24, was determinative. After observing that former Section 507.24 defined "solicit" as "`* * * to entice, urge, lure or ask,'" id. at 45, the Howard court stated:
The defendant in this case did not entice, urge, lure or ask for the money in return for sexual performance. What defendant did was agree to what the officer had suggested and as such he cannot be found to be guilty of soliciting, an offense unlike some other offenses where entrapment is raised, where the crimeis in the asking.
 {¶ 39} In Swann, according to the testimony of Officer Chancey Prude, after Officer Prude invited the defendant into an unmarked police car, a sexual discussion arose with the defendant in the following manner:
* * * "[I asked her] well, do you want to trade off crack — or instead of money for the sex act, which was oral sex, and she said no, I'll take the money. I said okay, and I said, how much is it going to cost me, and we kind of went back and forth on that, and I said $10, and she said no, I'll take $15." * * *
Id. at 89.
 {¶ 40} Defendant testified similarly. Id. According to Swann:
* * * "He [Officer Prude] asked me, did I want to do something for some money and he offered me $10 for oral sex and I said no, not $10. I did say maybe $15, and he said what would you do for everything. I said, I'm not doing everything."
Id.
 {¶ 41} The Swann court found that the facts of that case were "almost exactly the same" as those in Howard, supra.Swann, at 89. Agreeing with Howard's reasoning that in a soliciting case the crime is the asking, the Swann court stated:
We agree with the reasoning of Howard that, in a soliciting case, the crime is the asking. Swann was the solicitee, not the solicitor. Although she agreed to the solicitation, the specific crime with which she was charged does not prohibit acceptance, only entreaty. Of course, if she had gone through with the act, she would have been guilty of prostitution, regardless of who had made the original solicitation. That distinction makes sense, especially because the law should be slow to punish conversation alone.
Id. at 90. (Footnotes omitted.)
 {¶ 42} In Columbus v. Myles, Franklin App. No. 04AP-1255, 2005-Ohio-3933, which was rendered subsequent to defendant's conviction, this court discussed Swann and Howard, as follows:
In determining that the defendants in Swann and Howard were not guilty of soliciting, the courts stated that, in a soliciting case, the crime is in the asking. Swann at 90; Howard at 45. However, these courts did not limit soliciting cases to situations where a defendant explicitly asks for sexual activity for hire, as appellant suggests. See Swann at 89; Howard at 45. Instead, the courts in Swann and Howard recognized that soliciting may also involve a defendant enticing, urging or luring another to engage in sex for hire. See Swann at 89;Howard at 45. Likewise, the courts in Swann and Howard did not exonerate the defendants on the basis that the undercover law enforcement officers, and not the defendants, suggested the particular sexual activity and price. Rather, these courts concluded that the defendants were not guilty of soliciting because they merely agreed to the law enforcement officers' advances and did nothing more that rose to the level of enticing, urging, luring or asking the officers to engage in sex for hire. See Swann at 90; Howard at 45.
Id. at ¶ 24.[5]
 {¶ 43} Here, as discussed above, according to the evidence, while she was nude and sitting on Detective Stevens' back, defendant inquired as to whether he "want[ed] more." (Tr. 136.) When Detective Stevens inquired as to what she meant, defendant stated "everything" and, "[s]he made the statement sex and fellatio," for a price of $160. (Id.) Such evidence is factually distinguishable from Howard and Swann, wherein those courts concluded that those defendants "merely agreed to the law enforcement officers' advances and did nothing more that rose to the level of enticing, urging, luring or asking the officers to engage in sex for hire." Myles, at ¶ 24. According to Detective Stevens' testimony, after having paid defendant to massage him while she was nude and while he was receiving such a massage, he made no further advances. Rather, according to Detective Stevens, defendant inquired whether he "want[ed] more" and "[defendant] made the statement sex and fellatio," for a price of $160. (Tr. 136.)
 {¶ 44} In Myles, this court also observed that Ohio courts have defined "solicit" in statutes similarly worded to Columbus City Code 2307.24(A),[6] as "`"to entice, urge, lure or ask."'" Id. at ¶ 20. Here, with regard to the offense of soliciting for prostitution, the trial court in this case defined "solicit" as follows: "`Solicit' means to entice, urge, lure or ask." (Written Jury Instructions; Tr. 217.)
 {¶ 45} As Ohio courts have similarly defined "solicit,"Myles, at ¶ 20, we therefore cannot conclude that the trial court's definition of "solicit" in its jury instruction was an incorrect statement of law or that the trial court's definition constituted an abuse of discretion. See, also, (2003) 4 Ohio Jury Instructions 280, Section 507.24 (defining "solicited" as meaning "enticed, urged, lured or asked").[7]
 {¶ 46} In sum, for the foregoing reasons and under these facts and circumstances, we conclude that the trial court properly refused defendant's proposed jury instructions as to the charge of soliciting for prostitution and gave all instructions that were relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder as to the charge of soliciting for prostitution, and because the trial court properly refused defendant's proposed jury instructions as to the charge of soliciting for prostitution, and because the trial court gave all instructions that were relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder as to the charge of soliciting for prostitution, we therefore do not conclude that the trial court abused its discretion as to its jury charge concerning the offense of soliciting for prostitution. Therefore, we overrule defendant's two assignments of error.
 {¶ 47} Accordingly, both of defendant's assignments of error are overruled, and the judgment of the Franklin County Municipal Court is affirmed. Judgment affirmed.
Bryant and Travis, JJ., concur.
[1] Based upon our review of the audiotapes that were admitted into evidence, many portions of the audiotapes are unintelligible.
[2] After the trial court had instructed the jury, defense counsel also made this proffer:
I requested the jury instruction regarding "agreeing to engage" — "agreeing to engage in sexual activity," because the audiotape in the case reflected that the officer asked Ms. Dovangpraseuth at — a number of occasions to remove her clothes, be given a nude massage, and he was rather persistent about that. It appeared to me, from the state of the audiotape, that the person who was actually asking or enticing to engage, or at least initiating the engagement of any possible sexual activity, was, in fact Officer Stevens.
(Tr. at 225.)
[3] The trial court found unpersuasive defendant's reliance upon State v. Howard (M.C. 1983), 7 Ohio Misc.2d 45, and Statev. Swann (2001), 142 Ohio App.3d 88. The trial court stated:
Yesterday, when everything cleared out, you guys went home early and I was still here working, I thought about that some more, and I agree with Mr. Tobias [assistant city prosecutor] that its not binding precedent because it's from the First Appellate District.
But that's not the reason that I've decided not to include this instruction. The reason that I've decided not to include this instruction is because I do not believe that it is an accurate statement of the law. It begins with the words, "It is not a crime to agree to engage in sexual activity for hire," but, in essence, it is a crime to agree to engage in criminal conduct. That's conspiracy, whether the criminal conduct is completed or not. And that is a separate offense.
So with all due respect to Judge Painter * * * I think that this is not an accurate statement of the law and I'm not going to include that instruction.
(Tr. at 185-186.)
The trial court further explained its reasoning as follows: Either offer or acceptance to engage in an illegal act is conspiracy to engage in an illegal act. They're planning to commit a crime under those circumstances and there's no way that I will instruct the jury that it is not against the law to conspire to commit a crime. The very elements of conspiracy do not require the completion of the crime as long as there's at least one act in furtherance. And once an agreement is made on a price, there's an act in furtherance with the act of prostitution.
(Tr. at 188-189.)
See, generally, R.C. 2923.01 (conspiracy); State v. Marian
(1980), 62 Ohio St.2d 250, syllabus (holding that "[a] person is guilty of conspiracy under R.C. 2923.01, when with purpose to commit, promote, or facilitate the commission of one of the offenses listed in R.C. 2923.01(A), he plans the commission of the crime with another and does a substantial overt act in furtherance of the conspiracy, even though the other person feigns agreement and at no time intends to go through with the plan"); State v. Lindsey (2000), 87 Ohio St.3d 479, 481, reconsideration denied, 88 Ohio St.3d 1438, certiorari denied,531 U.S. 838, 121 S.Ct. 99 (stating that "[t]he offense of conspiracy is defined in R.C. 2923.01 as the agreement to accomplish a particular unlawful object, coupled with an overt act in furtherance thereof, whether remuneration is offered or not").
[4] Columbus City Code 2307.01(C) defines "sexual activity" as "sexual conduct or sexual contact or both." According to Columbus City Code 2307.01(B), "sexual contact" "means any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttocks, pubic region or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." Columbus City Code 2307.01(A) defines "sexual conduct" as "vaginal intercourse between a male and female and anal intercourse, fellatio and cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
[5] See, also, Myles, at ¶ 30 (wherein this court reiterated that "explicit conduct is not required to establish soliciting so long as the defendant's conduct * * * conforms with the alternative means of soliciting, i.e., luring, urging or enticing another into sex for hire. See Swann, at 89; [Akron v. Tyler
(Sept. 2, 1992), Summit App. No. 15513], Howard at 45 [Statev. Goff (Jan. 13, 1988), Summit App. No. 13244].
[6] Columbus City Code 2307.24(A) provides that "[n]o person shall solicit another to engage with such other person in sexual activity for hire." Under division (A)(b) of this section, whoever violates Columbus City Code 2307.24 is guilty of a misdemeanor of the first degree. R.C. 2907.24(A) provides that "[n]o person shall solicit another to engage with such other person in sexual activity for hire." Under R.C. 2907.24(C) (1), whoever violates R.C. 2907.24(A) is guilty of a misdemeanor of the third degree. Thus, excepting the classification of these crimes, Columbus City Code 2307.24(A) and R.C. 2907.24(A) contain identical proscriptions against soliciting. Accordingly, under both Columbus City Code 2307.24(A) and R.C. 2907.24(A), three elements constitute the offense of soliciting: (1) an accused's solicitation of another, (2) to engage in sexual activity, and (3) for hire. See Swann, supra, citing State v. Son (Dec. 11, 1998), Trumbull App. No. 98-T-0019 (discussing elements of soliciting under R.C. 2907.24). Cf. R.C. 2907.24(B) (concerning a solicitor with acquired immunodeficiency syndrome virus); R.C.2907.24(D) (use of a motor vehicle while committing soliciting); Columbus City Code 2307.24(A)(c) (use of motor vehicle while committing soliciting).
Under both the Columbus City Code and the Revised Code, the term "solicit" is undefined. See, generally, Columbus City Code 2301.01; R.C. 2907.01.
[7] Compare (2005) 4 Ohio Jury Instructions, Section 507.24 (defining "solicited" as meaning "to seek, to ask, to influence, to invite, to tempt, to lead on, or to bring pressure to bear").