[Cite as *State v. Hackney*, 2016-Ohio-4609.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO


STATE OF OHIO,                  :          APPEAL NO. C-150375
                                           TRIAL NO. B-1407260
    Plaintiff-Appellee,        :
                                           *O P I N I O N.*
  vs.                           :

MICHAEL HACKNEY,                :

    Defendant-Appellant.       :



Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal:  June 29, 2016



*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Joshua A. Thompson*, Assistant Public Defender, for Defendant-Appellant.

**FISCHER, Presiding Judge.**

{¶1}    Defendant-appellant Michael Hackney appeals his convictions for two counts of trafficking in cocaine under R.C. 2925.03(A)(1) and one count of having weapons while under a disability under R.C. 2923.13(A)(3).   He asserts four assignments of error for review.   We find some merit in his arguments.   We, therefore, reverse one of his trafficking convictions, but affirm his other two convictions.

### I.  Factual Background

{¶2}    The record shows that in December 2014, Cincinnati Police officers Mark Bode and Thomas Weigand met with a confidential informant, whom other officers had found to be reliable.   The informant agreed to assist them with a drug deal, and he identified his supplier as "Hack."   The police officers had been unfamiliar with that name until the informant had provided it.   From that nickname and "from other information provided," the police developed Hackney as a suspect. At some point in the investigation, the officers showed the informant a photograph of Hackney, and the informant confirmed that Hackney was the seller.   They also identified a residence at 1054 Loiska Lane, #3, in College Hill as a location for a controlled buy by the informant.

{¶3}    On the day of the buy, Bode and other officers kept watch on the Loiska Lane residence.   They saw a van registered in Hackney's name and that Hackney was known to drive parked outside.   The police had the informant call "Hack" to arrange a purchase.   They monitored the informant as he made the call, but the call was not recorded.

2

{¶4} Before the buy, Bode searched the informant and gave him $600 to purchase the drugs. The police officers photocopied the bills to make sure that they had the serial numbers of the bills so that they could be identified later. Bode testified that the bills were then considered "marked."

{¶5} 1054 Loiska Lane was a multi-unit apartment building with a common exterior door. The informant tried the door, but it was locked. Bode saw him "get on his cell phone," but could not hear what was said in that phone call. When an unrelated woman came out of the door, the informant used that opportunity to enter the building.

{¶6} Bode and the other officers were in radio contact with each other, but they could not hear or contact the informant. He advised the other officers when the informant had entered the building. They could not see the informant once he went in the building. Bode observed the informant leave the building and get into his car.

{¶7} The police followed the informant to a prearranged location, and he turned over a baggie of crack cocaine. Police officers then searched the informant and his car, but did not find any additional drugs or money.

{¶8} On December 24, 2014, Bode obtained a search warrant for 1054 Loiska Lane, #3. The police executed the warrant on December 26, 2014. Before the search, they placed the building and Hackney's van, which was parked outside, under surveillance. They saw a person matching Hackney's description leave the building, get into the van, and drive away. Bode radioed a uniformed officer, who stopped the van a "safe distance" away.

{¶9} Hackney identified himself, but denied living at 1054 Loiska Lane. At first, he was agitated and combative with the police. Bode told Hackney that he was under arrest for drug trafficking and that the police had bought drugs from him at

that address. Hackney then admitted that he stayed there with his girlfriend, Antoinette Hamm, whose son had shot at police officers the summer before. He claimed that he was being targeted because he was living with Hamm.

{¶10} Bode told Hackney that the police had a search warrant and asked him if any of his keys would unlock doors at the Loiska Lane apartment. Hackney said that they would not. The police then seized the keys. A teenage girl let the officers into the apartment. They found that one of Hackney's keys opened the front door of the apartment.

{¶11} After entering the apartment, the police officers saw a door at the end of a hallway secured with a deadbolt. They used one of Hackney's keys to open the locked door. Inside they found marijuana, an ounce of crack cocaine prepared for sale, plastic baggies, a Pyrex jar, approximately $400 in cash, an operable semi-automatic pistol, a magazine and bullets. The police also found a prescription bottle bearing Hackney's name, as well as mail addressed to him.

{¶12} In the living room of the apartment, the police recovered photographs of Hackney. In the kitchen, they found another digital scale. They also found a scale at the bottom of a laundry basket. Though they looked for the marked bills used in the buy, those bills were never recovered.

{¶13} Bode and Weigand interviewed Hackney after his arrest. At that time, he was more cooperative. He told the officers that he had found the gun recovered in the search on the street and that he had fired it only once, to test it. He was willing to provide information on his supplier in exchange for case consideration. He said that he had obtained drugs from someone he knew as "Hen" and that he regularly went to a house in Bond Hill to purchase ounces of cocaine, which he then sold in very small

4

quantities. Despite several attempts to figure out where the house was, the police were never able to identify or locate "Hen."

{¶14} While he was in jail, Hackney called a girl, whom police believed to be his daughter. He asked the girl to tell police that the drugs were hers. He told her that because she was a juvenile, she would receive a lesser sentence than he would receive as an adult.

{¶15} Hackney was indicted for four offenses. Count 1 was trafficking in cocaine as a third-degree felony related to the sale of the drugs to the informant. Count 2 was trafficking in cocaine as a second-degree felony related to the drugs found in the apartment during the execution of the search warrant. Count 3 was possession of cocaine related to the drugs found in the apartment. Count 4 was having weapons while under a disability related to the gun found in the apartment.

{¶16} Following a jury trial, Hackney was found guilty of all four counts. The trial court merged the possession count with the trafficking charge in Count 2, and sentenced Hackney to serve a total of 14 years in prison. This appeal followed.

## II. Confrontation

{¶17} Hackney presents four assignments of error for review, which we will consider out of order. In his second assignment of error, he contends that he was denied the right to confront the witnesses against him. He argues that the trial court erred when it allowed testimonial hearsay into evidence. This assignment of error is well taken in part.

{¶18} The Sixth Amendment to the United States Constitution states, "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted by the witnesses against him[.]" In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354,

5

158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53-54.

{¶19} Only testimonial statements implicate the Confrontation Clause. *Id.* at 50-51; *State v. Stahl*, 111 Ohio St.3d 186, 2006-Ohio-5482, 855 N.E.2d 834, ¶ 15-16; *State v. Robinson*, 1st Dist. Hamilton No. C-060434, 2007-Ohio-2388, ¶ 13. Testimonial statements occur where there is no ongoing emergency and the statements resulted from a police interrogation of which the "primary purpose [was] to establish or prove past events potentially relevant to later criminal prosecution." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, ¶ 17, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *In re B.T.B.*, 12th Dist. Butler No. CA2014-10-199, 2015-Ohio-2729, ¶ 28.

{¶20} The Confrontation Clause does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. *Ricks* at ¶ 18; *State v. Matthews*, 1st Dist. Hamilton Nos. C-060669 and C-060692, 2007-Ohio-4881, ¶ 10. Generally, statements offered to explain an officer's conduct during an investigation of a crime are not hearsay because they are not offered for their truth. *In re B.T.B.* at ¶ 30. Courts have permitted the introduction of testimonial statements where the testimony provided background information or context for the investigation, or explained a detective's conduct while investigating a crime. *Matthews* at ¶ 10.

{¶21} But there are limits to this general rule because of the great potential for abuse and confusion of the trier of fact. *Ricks* at ¶ 24. "[T]he well-worn phrase 'not offered for the truth of the matter asserted' is not a talismanic incantation that

opens the door to everything said outside the courtroom." *Id.* at ¶ 25, quoting *State v. Richcreek*, 196 Ohio App.3d 505, 2011-Ohio-4686, 964 N.E.2d 442, ¶ 26 (6th Dist.). Testimony offered to explain police officers' conduct is only admissible if three conditions are met: (1) the conduct to be explained should be "relevant, equivocal, and contemporaneous with the statements;" (2) the probative value of the statements must not be substantially outweighed by the danger of unfair prejudice; and (3) the statements cannot connect the accused with the crime charged. *Ricks* at ¶ 27; *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 20.

{¶22} In this case, the informant did not testify at trial and Hackney had no opportunity to cross-examine him. At first, Officer Bode testified that the informant identified his supplier as "Hack." Hackney objected to that testimony on the grounds that it constituted hearsay, and the trial court sustained the objection. Nevertheless, the court allowed Bode to repeatedly refer to the name, "Hack." He testified that the police officers identified Hackney as a suspect from that nickname and "from other information provided." But Bode's testimony made clear that the name came from the informant and nowhere else. He testified that prior to talking with the informant, he had never heard the name. Both Bode and Weigand made numerous references to Hackney, including indicating that the informant had identified a picture of Hackney, and their testimony showed that information had come solely and directly from the informant.

{¶23} All of this testimony went beyond describing the steps in the investigation. Instead, it involved hearsay that connected Hackney to the sale of cocaine to the informant that was the subject of the trafficking charge in Count 1 of the indictment by relating historical facts of the investigation. *See Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, 995 N.E.2d 1181, at ¶ 51 (French, J., concurring); *Jones*

at ¶ 21. In fact, that testimony was the only evidence connecting him to the sale. Therefore, the admission of that hearsay evidence violated Hackney's right to confront the witnesses against him. *See Jones* at ¶ 21.

{¶24} After the first objection, counsel did not object to some of the improper testimony, so we must review the testimony for plain error. Under a plain-error analysis, this court must affirm a conviction unless, but for the allegedly inadmissible evidence, the outcome of the trial would have been different. *State v. Underwood*, 3 Ohio St.3d 12, 13, 444 N.E.2d 1332 (1983); *Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, at ¶ 22. Because the hearsay was the only evidence linking Hackney to the drug sale to the informant as charged in Count 1 of the indictment, its admission affected the outcome of the trial. Therefore, the error rises to the level of plain error.

{¶25} Hackney contends that the error also affected his other convictions. We disagree. Those convictions were based on evidence stemming from the execution of a valid search warrant. *See Matthews*, 1st Dist. Hamilton Nos. C-060669 and C-060692, 2007-Ohio-4881, at ¶ 12. While the hearsay was inadmissible at trial, hearsay statements adequately supported the application for the search warrant, because there was a factual basis for the information the informant had relayed, and there was a sufficient basis to determine the informant's reliability. *See State v. Karr*, 44 Ohio St.2d 163, 165, 339 N.E.2d 641 (1975); *State v. Urdiales*, 3d Dist. Henry No. 7-15-03, 2015-Ohio-3632, ¶ 18-19; *State v. Green*e, 1st Dist. Hamilton No. C-790524, 1980 Ohio App. LEXIS 10685, *3-4 (July 30, 1980).

{¶26} Further, the police had probable cause to believe that drugs would be found at the Loiska Lane address and to arrest Hackney after the alleged sale to the informant. Probable cause is a lesser standard of proof than that required for a

conviction, which is proof beyond a reasonable doubt. Probable cause only requires the existence of circumstances that warrant suspicion. *State v. George*, 45 Ohio St.3d 325, 329, 544 N.E.2d 640 (1989); *State v. Bremenkamp*, 1st Dist. Hamilton Nos. C-130819 and C-130820, 2014-Ohio-5097, ¶ 11; *State v. Smith*, 4th Dist. Highland No. 09CA29, 2010-Ohio-4507, ¶ 84.

{¶27} Nevertheless, we hold that the trial court erred in admitting hearsay into evidence and that the error affected the result of the charge in Count 1 of the indictment. Consequently, we sustain Hackney's second assignment of error as to that count and overrule it as to the other counts.

### III. Sufficiency

{¶28} In his third assignment of error, Hackney contends that the evidence was insufficient to support his conviction for trafficking in cocaine in Count 1, which related to the sale of cocaine to the informant. This assignment of error is well taken.

{¶29} The relevant inquiry, when reviewing the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offenses proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Ojile*, 1st Dist. Hamilton Nos. C-110677 and C-110678, 2012-Ohio-6015, ¶ 48.

{¶30} In Count 1, Hackney was convicted of violating R.C. 2925.03(A)(1). It provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance * * * ." Besides proof of each element of the offense, the state must also demonstrate the identity of the defendant as the perpetrator beyond a reasonable

9

doubt. *State v. Cook*, 65 Ohio St.3d 516, 526, 605 N.E.2d 70 (1992); *State v. Brown*, 12th Dist. Warren No. CA2006-10-120, 2007-Ohio-5787, ¶ 29.

{¶31} In this case, there is no evidence that Hackney sold drugs to the informant. The informant did not testify. The residence where the controlled buy occurred was a multi-unit building that the informant was only able to enter because another person had left. The police officers could not see or hear what occurred while the informant was inside. There was no testimony about who he spoke to, if anyone, or what he did once inside. While the informant was searched before and after he went into the building, and he returned with a baggie of crack cocaine, the marked money supposed to be used in the sale was never recovered.

{¶32} Considering the evidence in a light most favorable to the prosecution, we hold that the state failed to prove beyond a reasonable doubt that Hackney was the person who had sold crack cocaine to the informant. Consequently, we sustain Hackney's third assignment of error, and we reverse the conviction for trafficking in cocaine as charged in Count 1 of the indictment.

### IV. Manifest Weight

{¶33} In his fourth assignment of error, Hackney contends that all of his convictions were against the manifest weight of the evidence. Since we have already reversed his conviction on Count 1 of the indictment, we need not address whether it was against the manifest weight of the evidence. *See State v. Cedeno*, 192 Ohio App.3d 738, 2011-Ohio-674, 950 N.E.2d 582, ¶ 25 (1st Dist.).

{¶34} As to his other two convictions, after reviewing the record in this case, we cannot hold that the jury clearly lost its way and created such a manifest miscarriage of justice that we must reverse the convictions and order a new trial.

Consequently, we cannot hold that they are against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *Cedeno* at ¶ 25. We overrule Hackney's fourth assignment of error.

### *V. Ineffective Assistance of Counsel*

{¶35} Finally, in his first assignment of error, Hackney contends that he was denied the effective assistance of counsel. He argues that his counsel was ineffective for failing to object to hearsay evidence and evidence of plea negotiations, stipulating to laboratory reports regarding cocaine weight, consenting to unrecorded sidebar conferences, failing to file a motion to suppress on appropriate grounds, and providing erroneous legal advice concerning a plea bargain. This assignment of error is not well taken.

{¶36} A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988); *State v. Bell,* 2015-Ohio-1711, 34 N.E.3d 405 ¶ 53 (1st Dist.). To sustain a claim for ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Bell* at ¶ 25.

{¶37} To establish that counsel's performance was deficient, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland* at 687-688; *State v. Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, ¶ 51. Judicial scrutiny of counsel's performance must be highly deferential. The defendant must overcome the presumption that, under the

circumstances, the challenged action might be considered sound trial strategy. *Strickland* at 689; *Thomas* at ¶ 51. A defendant is not deprived of the effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic. *State v. Brown*, 38 Ohio St.3d 305, 319, 528 N.E.2d 523 (1988); *Thomas* at ¶ 51.

{¶38} To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694; *Thomas* at ¶ 52. Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the proceeding was unreliable or fundamentally unfair because of counsel's performance. *Lockhart v. Fretwell*, 506 U.S. 364, 369-370, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995); *Thomas* at ¶ 52.

### A. Failure to Object to Hearsay

{¶39} First, Hackney contends that his counsel was ineffective for failing to object to hearsay. Counsel's failure to make objections is not, by itself, enough to sustain a claim for ineffective assistance of counsel. *State v. Conway*, 108 Ohio St. 3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 168; *Thomas* at ¶ 53. First, counsel did object to some of the police officer's testimony on the basis of hearsay, and the trial court sustained those objections. Second, most of this argument is moot because that testimony pertained primarily to the conviction in Count 1, which we have reversed.

### B. Failure to Object to Evidence of Plea Negotiations

{¶40}  Hackney also contends that his counsel was ineffective for failing to object to evidence of plea negotiations admitted in violation of Evid.R. 410. Specifically, he argues that counsel should have objected to the police officers' testimony that Hackney agreed to cooperate and act as a confidential informant. Under the circumstances, Hackney had no reasonable expectation that a plea was being negotiated because his statements were made to the police officers at an early investigatory stage.  Therefore, they were not plea negotiations within the meaning of Evid.R. 410.  *See State v. Jeffries*, 119 Ohio St.3d 265, 2008-Ohio-3865, 893 N.E.2d 487, ¶ 9-11; *State v. Kidder*, 32 Ohio St.3d 279, 285, 513 N.E.2d 311 (1987); *State v. Poulton*, 5th Dist. Muskingum No. CT2013-0030, 2014-Ohio-1198, ¶ 22-29. Consequently, counsel was not ineffective for failing to object on that basis.

### C. Stipulation to Laboratory Reports

{¶41}  Hackney next argues that his counsel was ineffective for stipulating to the laboratory reports regarding the weight of the cocaine.  He relies on *State v. Gonzales*, 6th Dist. Wood No. WD-13-086, 2015-Ohio-461.  In that case, the Sixth Appellate District held that in prosecuting cocaine offenses under R.C. 2925.11(C)(4)(a) through (f), the state must prove that the weight of the actual cocaine possessed by the defendant met the statutory threshold.  Because the state failed to present evidence of the cocaine's purity, the court reversed the penalty enhancement.  *Id.* at ¶ 47.

{¶42}  But that case is not binding authority in this district.  *See State v. Dovangpraseuth*, 10th Dist. Franklin No. 05AP-88, 2006-Ohio-1533, ¶ 36; *Stapleton v. Holstein*, 131 Ohio App.3d 596, 598, 723 N.E.2d 164 (4th Dist.1998).  In *State v.*

13

*Fuller*, 1st Dist. Hamilton No. C-960753, 1997 Ohio App. LEXIS 4398 (Sept. 26, 1997), this court held that "[t]he quantity of the entire mixture, rather than the quantity of pure cocaine within the mixture, is used to determine the bulk amount." *Id.* at \*6. While the Ohio Supreme Court did agree to decide the issue, s*ee State v. Gonzales*, 143 Ohio St.3d 1403, 2015-Ohio-2747, 34 N.E.3d 132, and *State v. Gonzales*, 143 Ohio St.3d 1402, 2015-Ohio-2747, 34 N.E.3d 131, it has not yet ruled, and *Fuller* remains the law of this district.

{¶43} Thus, it would have been futile for counsel to object to the report. Further, defense counsel's decision to stipulate to evidence is generally considered a tactical decision. Even debatable trial tactics and strategies do not constitute ineffective assistance of counsel. *State v. Chatman*, 10th Dist. Franklin No. 08AP-803, 2009-Ohio-2504, ¶ 16.

### D. Failure to Object to Unreported Sidebar Conferences

{¶44} Hackney argues that his counsel was ineffective for consenting to unreported sidebar conferences at trial. This court has held that Crim.R. 22 requires the recording of sidebar conferences in serious-offense cases, and that a trial court's summary of the sidebar conferences in lieu of recording is error. *State v. Simmons*, 2014-Ohio-3695, 19 N.E.3d 517 ¶ 80 (1st Dist.); *State v. Davis*, 1st Dist. Hamilton No. C-130198, 2014-Ohio-794, ¶ 13. But we have also held that the defendant must show prejudice from the failure to record, especially where the defendant does not object to the procedure employed by the court. *Simmons* at ¶ 81.

{¶45} In this case, the trial court summarized in detail what had occurred at the sidebar conferences. Each time, the court asked both counsel if they had anything to add, and both replied that they did not. Hackney also did not attempt to

14

reconstruct the conferences under App.R. 9(C). Consequently, Hackney has not demonstrated any prejudice from the unrecorded sidebar conferences, and, therefore, he cannot show ineffective assistance of counsel. *See State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 34-35.

### E. Failure to File a Motion to Suppress on Appropriate Grounds

{¶46} Next, Hackney argues that trial counsel filed a motion to suppress based on the wrong ground. Counsel filed the motion on the basis that the affidavit contained a false statement under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). But at the hearing on the motion to suppress, he could not point to any statement that was false. Instead, he argued that the affidavit was insufficient to show that Hackney was the individual who had sold drugs to the confidential informant. The trial court overruled the motion.

{¶47} Hackney now argues that counsel should have filed a motion to suppress based on the illegal stop of his vehicle. He relies on *Bailey v. United States*, ___ U.S. ___, 133 S.Ct. 1031, 185 L.Ed.2d 19 (2013). In that case, the United States Supreme Court held that *Michigan v. Summers*, 452 U.S. 692, 101 S.Ct. 2587, 69 L.Ed.2d 340 (1981), which allows for a detention incident to the execution of a search warrant, "is limited to the immediate vicinity of the premises to be searched" and does not allow for a defendant to be detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question. *Bailey* at 1042. "Once an individual has left the immediate vicinity of the premises to be searched, * * * detentions must be justified by some other rationale." *Id.* at 1042-1043.

{¶48} The police offered two rationales for their stop of Hackney's car. The first justification falls squarely within the rule set forth in *Bailey*. The officers stated

15

that they had watched Hackney leave the premises to be searched and get into his car. They followed his car and stopped him some distance away from the premises for purposes of officer and bystander safety.

{¶49} Nevertheless, the police officers also stated that they had stopped Hackney's vehicle to arrest him for drug trafficking based on the sale to the informant. An arrest without a warrant in a public place is valid if the arresting officer had probable cause to make it. *State v. Timson*, 38 Ohio St.2d 122, 126-127, 311 N.E.2d 16 (1974); *Cincinnati v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 14. As we have previously stated, probable cause is a lesser standard than proof beyond a reasonable doubt. *George*, 45 Ohio St.3d at 329, 544 N.E.2d 640; *Bremenkamp*, 1st Dist. Hamilton Nos. C-130819 and C-130820, 2014-Ohio-5097, at ¶ 11; *Smith*, 4th Dist. Highland No. 09CA29, 2010-Ohio-4507, at ¶ 84.

{¶50} At the time of Hackney's arrest, Bode and the other officers had facts and circumstances within their knowledge sufficient to warrant a prudent individual to believe that Hackney had committed or was committing an offense. Therefore, they had probable cause to make the arrest, and it did not violate Hackney's Fourth Amendment rights. *See State v. Heston*, 29 Ohio St.2d 152, 155-156, 280 N.E.2d 376 (1972); *State v. Deters*, 128 Ohio App.3d 329, 333, 714 N.E.2d 972 (1st Dist.1998).

{¶51} Because the police had an alternate reason to stop Hackney, a motion to suppress based on *Bailey* would ultimately not have been successful. Therefore, the failure to file the motion was not prejudicial. *See State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65; *Thomas*, 1st Dist. Hamilton No. C-120561, 2013-Ohio-5386, at ¶ 53.

### *F. Erroneous Plea-Bargain Advice*

**{¶52}** Finally, Hackney argues that trial counsel provided erroneous advice concerning a plea bargain. He relies on *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), in which the United States Supreme Court held that the Sixth Amendment right to counsel applies to the plea-bargaining process. *Id.* at 1384. But in that case, the record showed that the defendant had refused to accept the plea bargain based on the advice of counsel. He went to trial, was found guilty, and received a much more severe sentence than he would have received under the plea bargain. *Id.* at 1386. Therefore, the United States Supreme Court reversed the conviction and remanded the matter to the trial court with instructions for it to order the state to reoffer the plea agreement. *Id.* at 1391.

**{¶53}** In this case, the record shows that the prosecutor put the plea offer on the record. The trial court advised Hackney to discuss the matter with his counsel, and, after doing so, Hackney rejected the plea offer. The record does not show what counsel's advice to Hackney was. Counsel very well could have told him to take it, and Hackney rejected that advice. Nothing in the record shows that but for counsel's advice, Hackney would have accepted the plea deal. Consequently, he cannot show ineffective assistance of counsel on that basis.

**{¶54}** The record shows that generally, Hackney's counsel provided him with a diligent defense. Hackney has not demonstrated that counsel's performance was deficient or that but for counsel's deficient performance, the result of the proceeding relating to Counts 2 and 4 would have been different or that the result of the proceeding was unreliable or fundamentally unfair. Therefore, he has failed to meet his burden to show ineffective assistance of counsel. *See Strickland*, 466 U.S. at 687-

689, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Bell*, 2014-Ohio-1711, 34 N.E.3d 405, at ¶ 53-55.  We, therefore, overrule his first assignment of error.

### VI.  Summary

{¶55}  In sum, we sustain Hackney's second and third assignments of error as to Count 1.  We vacate the conviction in Count 1 for trafficking in cocaine as a third-degree felony, and Hackney is discharged as to that count.  We overrule his remaining assignments of error, and affirm the trial court's judgment in all other respects.  We note that this holding reduces Hackney's total sentence of 14 years' incarceration to 11 years.  We remand the matter to the trial court to enter judgment in accordance with this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**CUNNINGHAM** and **STAUTBERG, JJ.,** concur.

Please note:
> The court has recorded its own entry this date.