[Cite as *State v. Brown*, 2024-Ohio-715.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-230308 |
| | | TRIAL NO. 22CRB-14553 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| SAPPHIRE BROWN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 28, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Proseuting Attorney, and *Dahkota Parish*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Following a bench trial, defendant-appellant Sapphire Brown was convicted of assault under R.C. 2903.13(A). She now appeals, asserting one assignment of error challenging the weight and sufficiency of the evidence supporting her conviction. We find no merit in her assignment of error, and we affirm her conviction.

{¶2} The record shows that on August 8, 2022, the victim, Aswana Laskey, went to her niece's home to pick up some money. As Laskey got out of her car, she had her cell phone, her purse, and her keys in her left hand. As she approached her niece's apartment building, she saw three women sitting on the porch. She recognized one of the women, London Walker, because she had attended her mother's funeral.

{¶3} At first, Laskey ignored the three women. She knew that Walker had had issues with her niece, but she did not want to get involved as she had "never had any interaction with them." She told them, "I have nothing to do with what you all have going on with my niece." The women got off of the step and approached Laskey. She put her hand up, and told Walker that she was too close and to "get out of [her] face."

{¶4} The women then surrounded Laskey and started hitting her on her head and face. Laskey attempted to cover her head. She was also focused on trying not to drop her phone, purse and keys. She did not fight back because she was not able to, and her primary goal was "to keep her head safe and not to fall on the ground because [she] did not want to be kicked or stomped on."

{¶5} Nevertheless, Laskey testified that she was hit on the left side of her face. Laskey knew that Brown was the attacker on her left, even though she did not yet know Brown's name. Laskey was certain that Brown was the women who hit her during the

attack because Brown was the one on her left side. As a result of the attack, Laskey had bruising, a swollen face and eye, a lump on her head, and a concussion.

{¶6} After the attack, Laskey called the police and made a report. One of the officers at the scene described her as "very afraid and frantic" and noted that she had a "pretty big knot on her forehead" and "a busted top lip." Laskey told the officers that she did not know the women who had attacked her other than Walker. She could not describe her attackers or their clothing because it was too dark. She described the light from the porch and a street light as dim.

{¶7} A short time later, a warrant was issued for Walker's arrest. Subsequently, Detective Michael Schneider was assigned to the case. He received a tip from Laskey's niece that Brown was also involved in the incident. He put together a photo lineup, which included a picture of Brown. Then, he called Laskey and told her that he had a person of interest, and asked whether she could identify that person from a photo lineup.

{¶8} He asked Detective Jacquelyn Metz to conduct a blind administration lineup. In compliance with the Cincinnati Police Department's policy on lineups, Detective Metz did not know who the suspect was and did not view the photos herself. Under that policy, she presented Laskey with ten folders, six of which contained photos and four of which each had a blank piece of paper, and she went over the instructions with Laskey. Laskey took her time looking through the photographs at first. Then she asked to see two of the photos again. She identified Brown and indicated to Detective Metz that she was 90 percent sure Brown was one of her attackers.

3

**{¶9}** The photos from the lineup were presented at trial, and Laskey indicated which photograph she had identified. She told the court that she was sure that the person she identified then was the same person who assaulted her.

**{¶10}** In her sole assignment of error, Brown contends that her conviction for assault was not supported by sufficient evidence and was against the manifest weight of the evidence. She argues that the state failed to prove beyond a reasonable doubt that she assaulted Laskey. This assignment of error is not well taken.

**{¶11}** The relevant inquiry, when reviewing the sufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proved beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Hackney*, 1st Dist. Hamilton No. C-150375, 2016-Ohio-4609, ¶ 29. In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses. *State v. Walker,* 1st Dist. Hamilton No. C-190193, 2020-Ohio-1581, ¶ 60.

**{¶12}** Brown was convicted of assault under R.C. 2903.13(A), which provides, "No person shall knowingly cause or attempt to cause physical harm to another * * *." Besides proof of each element of the offense, the state must also demonstrate the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Cook*, 65 Ohio St.3d 516, 526, 605 N.E.2d 70 (1992); *Hackney* at ¶ 30.

**{¶13}** Brown contends that the state failed to prove that she was involved in the assault because Laskey's identification of her was unreliable, and proper procedures were not followed during the photo lineup. We note that Brown had filed a motion to suppress the identification testimony, but later withdrew that motion.

{¶14} Brown further argues that Laskey told the police at the scene that she could not identify anyone other than Walker because the light was dim and she could not see her attackers because they were hitting her. Laskey informed police that her attackers had lighter skin and appeared to be in their mid-20s, but she could not provide any other information. Brown was named as a person of interest only after Laskey's niece, who was involved in a dispute with Brown's sister, called Detective Schneider and gave him Brown's name.

{¶15} But as the trial court noted, Laskey consistently identified Brown as one of the women involved in the assault. Though Laskey did not know Brown's name, she identified Brown in court and in the photo lineup as the person on her left who struck her several times with a closed fist. One of the state's exhibits was a photograph of her injuries taken about 20 minutes after the assault. She said that a lump on the left side of her head depicted in the photo was caused by Brown, because Brown was the person standing on her left side.

{¶16} Our review of the record shows that a rational trier of fact, after viewing the evidence in a light most favorable to the prosecution, could have found that the state proved beyond a reasonable doubt all of the elements of assault under R.C. 2903.13(A). Therefore, the evidence was sufficient to support the conviction.

{¶17} Brown also argues that the conviction was against the manifest weight of the evidence. After reviewing the record, we cannot hold that the trier of fact lost its way and created such a manifest miscarriage of justice that we must reverse Brown's conviction and order a new trial. Therefore, the conviction was not against the manifest weight of the evidence. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, ¶ 24.

**{¶18}** Basically, Brown argues that Laskey's testimony was inconsistent and not credible. A defendant is not entitled to a reversal on manifest-weight grounds merely because inconsistent evidence was presented at trial. *State v. Ridley*, 1st Dist. Hamilton No. C-210458, 2022-Ohio-2561, ¶ 25. Further, the trial court specifically stated that it found Laskey's testimony to be credible, and matters as to the credibility of evidence are for the trier of fact to decide. *State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *Ridley* at ¶ 25. Under the circumstances, we overrule Brown's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**BOCK, P.J.,** and **BERGERON, J.,** concur.


Please note:
    The court has recorded its own entry this date.